**UNITED STATES of America**

v.

**Albert GOLDSTEIN et al., Defendants.**

**No. 72–CR–18.**

United States District Court,
E. D. New York.

May 5, 1972.

Robert A. Morse, U. S. Atty., E.D.N. Y., Brooklyn, N. Y., for plaintiff; by Michael B. Pollack, Asst. U. S. Atty., of counsel.

Kostelanetz & Ritholz, New York City, for Albert Goldstein; by Jules Ritholz, Robert S. Fink, New York City, of counsel.

Arthur W. Lonschein, Jamaica, N. Y., for Morris Kessler.

Joseph E. Brill, New York, City, for Alfred Ceasar.

Moses Kove, and Irving Anolik, New York City, for Sam Jacobson.

Thomas J. O'Brien, New York City, for Murray Geller.

Bernard Dworkin, New York City, for Joseph Factoroff.

## MEMORANDUM AND ORDER

JUDD, District Judge.

*(Motions to Dismiss Indictment)*

Defendants other than Wisch and Cohen have moved to dismiss the complaint on various grounds.

The court will deal first with defendant Goldstein's motion to dismiss the indictment for failure to comply with allegedly necessary procedures preliminary to submission of the case to the grand jury or, in the alternative, for an evidentiary hearing concerning compliance with regulations, manuals, and practices relating to administrative due process and to his constitutional rights. Defendants Kessler and Jacobson, without expressly raising the same issues, have asked for the benefit of the motions of all other defendants. Since they are not indicted as taxpayers, they would not have the same pre-indictment rights which Goldstein asserts.

Defendant Geller's motion and Ceasar's are based on their assertion that the indictment does not state a federal offense. Defendant Factoroff asserts that he was inadequately advised of his rights before being asked to give testimony to the grand jury. Defendant Jacobson claims lack of speedy prosecution and statute of limitations.

## The Indictment

The indictment, in twenty counts, charges a series of interrelated violations of the Internal Revenue Code.

Count One charges Albert Goldstein, the Secretary-Treasurer of Rojo Trucking Corp., Jobie Trucking Corp. and Scotneil Trucking Corp., and Murray Geller, a former Revenue agent of the Internal Revenue Service assigned to auditing the tax returns of the three corporations and of defendant Goldstein, with conspiracy to defraud the United States of income taxes by deducting the salaries of fictitious employees from the corporate income tax returns of the three trucking corporations.

The substantive counts charge Goldstein and various combinations of defendants with filing false income tax returns for various years for the three corporations named in the conspiracy count, a fourth corporation, and Goldstein himself.

## Asserted Rights to Pre-Indictment Conferences

Defendant Goldstein claims that he was entitled to a series of four conferences at various administrative levels before the case against him could be presented to the grand jury, that denial of these conferences was arbitrary, and therefore that he has been deprived of due process and equal protection of the laws.

The right to conferences is claimed to exist at the levels of the Special Agent; the Assistant Regional Commissioner, Intelligence; and the Assistant Regional Counsel, Enforcement. Finally, defendant Goldstein claims that any potential prosecution is subject to further review in the Department of Justice, in the Criminal Section of its Tax Division, though it is not clear that he asserts the right to a further conference at this stage. It appears that 50% of prosecutions are declined at the district (Special Agent) level and smaller percentages at each succeeding stage.

The government asserts that the administrative conferences are not a prerequisite to grand jury action, that the regulations which defendant Goldstein relies on were not intended to create legal rights in taxpayers, and that the administrative practice has been not to provide conferences if information must be obtained through grand jury subpoenas rather than simply from the books and records of the taxpayer, and finally, that the grand jury has plenary power to indict.

No conference was offered at the Special Agent's level. The government points out that the Special Agent on the case did not specifically "recommend prosecution," but suggested instead that the case be referred to the Department of Justice for presentation to a grand jury. The grand jury inquiry was begun in November 1970.

Defendant Goldstein was offered a conference with Regional Counsel, Enforcement, in September 1971, concerning proposed criminal action against

him, but the letter to him was returned undelivered with a post-office notation, "Moved, Left No Address." An attorney in the Chief Counsel's office at IRS asserts that it is office policy not to make further efforts to communicate with taxpayers concerning a conference after a mailed notice has been returned. Goldstein had no authorized representative at the time. No other defendant was offered any sort of conference.

### Law and Regulations Concerning Pre-Indictment Conferences

The conference with the Special Agent is described in a published regulation, which defendant asserts is mandatory in form. The conference with the Regional Commissioner Intelligence, is described in the same regulations, but is clearly not mandatory. The subsequent conferences are described in internal manuals (for official use only), and in terms of practice or discretion.

None of the cases cited by defendant Goldstein imposes any limits on a grand jury's power to indict or on a United States Attorney's power to present a case to the grand jury, although they do in general terms give certain IRS regulations the force of law.

The statutory basis for defendants' contention is 26 U.S.C. § 7122(a), which in its terms authorizes compromise of criminal cases under the income tax laws, an authority not given in most other criminal cases. The statute provides:

(a) Authorization.—The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

(b) Record.—Whenever a compromise is made by the Secretary or his delegate in any case, there shall be placed on file in the office of the Sec-

retary or his delegate the opinion of the General Counsel for the Department of the Treasury or his delegate, with his reasons therefor, with a statement of—

(1) The amount of tax assessed,

(2) The amount of interest, additional amount, addition to the tax, or assessable penalty, imposed by law on the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of the compromise.

\*   \*   \*   \*   \*   \*

The statutory compromise provision is in Chapter 74 of the Revenue Act of 1954 which is entitled "Closing Agreements and Compromises." It does not apply to assessments of less than $500.

The statute has been construed not to contemplate compromise of purely criminal cases, unrelated to civil liability. In United States v. McCue, 178 F. Supp. 426, 434 (D.Conn.1959), aff'd (without mentioning this point), 301 F. 2d 452 (2d Cir.), cert. denied, 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962), Judge Anderson held that a compromise agreement concerning civil liability did not justify dismissal of an indictment. Judge Anderson stated (p. 434):

The purpose of the statute was to facilitate the money settlement of tax liabilities. The use of the disjunctive in the phrase to "compromise any civil *or* criminal case" was intended to take care of circumstances where criminal charges have been brought or a criminal prosecution has actually been commenced but no formal action has been taken with regard to the civil liabilities and an agreement has been reached covering both the civil and criminal aspects.

Section 7122 in any event merely authorizes the compromise of a criminal case, and does not in itself create any right to pre-indictment conferences.

1. Provision for a conference at the Special Agent level is contained in the published regulations (Federal Tax Regulations (West Pub. Co. 1971)) governing Internal Revenue practices, which provide in § 601.107(b) (2):

> Every person who may be the subject of a *recommendation for prosecution* shall be given an opportunity to explain his participation in the alleged criminal violation prior to the submission of the case to Regional Counsel, *unless compelling reasons exist to the contrary.* (Emphasis added).

This regulation is in sub-part A of Part 601 of the Federal Tax Regulations entitled "General Procedural Rules." The provision for an explanation serves a purpose related to efficiency, in avoiding prosecution of cases which may not really merit criminal prosecution. It is not clear that the procedure is intended to confer rights on a taxpayer. Indications are to the contrary as set forth later in this memorandum.

The difference between a recommendation for prosecution and a reference to the Department of Justice for presentation to a grand jury is given specific significance by a provision in the Enforcement Division Manual (for "Official Use Only"), which calls for referral of cases to the Department of Justice for consideration of grand jury investigation in the event that the special agents are unable to develop sufficient evidence to establish a *prima facie* case within the limits of their statutory authority. Enforcement Division Order #1952–7.

The provision of Reg. 601.107(b) (2) for giving a person an opportunity to explain his alleged criminal violation is subject to the express proviso that the opportunity will not be given if "compelling reasons exist to the contrary."

■ Defendant Goldstein asserts that "compelling reasons" are restricted to the examples set forth in ¶ 9355.1(1) of the Internal Revenue Manual, such as arrest, impending statute of limitations or risk of being unable to collect the taxes. This portion of the Manual is for official use only, and is only illustrative. Moreover, any right to a conference must also be qualified by the authorization in Order #1952–7, mentioned above, to recommend a grand jury investigation when facts can be more readily obtained in that way.

■ The Internal Revenue Manual for official use only, couples the provision of the Regulation for an explanation by the taxpayer with a reference to Policy Statement P–9350–2, which directs that the taxpayer will be informed of the alleged fraudulent features of the case at any conference only "to an extent consistent with protecting the government's interests." Where the Service considers it is not in the government's interests to make any disclosure, there is no obligation to hold a conference.

2. The next possible conference is mentioned in subdivision (c) of Regulation 601.107, which states:

> (c) Processing of cases after investigation. (1) The Assistant Regional Commissioner (Intelligence) may grant a conference to the subject of a criminal tax investigation referred to his office.

> (2) The Assistant Regional Commissioner (Intelligence) shall ordinarily notify the subject of an investigation and his authorized representative, if any, when he forwards a case to the Regional Counsel with a recommendation for prosecution. This rule will not apply if the case is with a U.S. Attorney.

■ It does not appear whether the case was in the hands of the U.S. Attorney before it was processed by the Assistant Regional Commissioner (Intelligence), but the conference at this level is clearly optional with the Commissioner, who could properly consider the same factors that led to omitting a conference at the Special Agent level.

■ 3. Defendant Goldstein's claim to a conference opportunity with the Assistant Regional Counsel, Enforcement, is based on Section 401.4 of the Internal

Revenue Manual (also for "Official Use Only"), which states:

> It is the practice of the Chief Counsel's Office to offer a conference opportunity to each prospective defendant in a criminal tax case. Conferences are generally granted if requested, or if Regional Counsel concludes that such a conference would serve a useful purpose.

Such a conference is clearly not a matter of right.

An Assistant Regional Counsel assigned to Enforcement in the North Atlantic Region states that it has been "the unvarying practice" to deny a conference "if, in the opinion of the Assistant Regional Counsel, Enforcement, the interests of the Internal Revenue Service warrant the denial of conferences."

■■ If the IRS has an obligation to grant preindictment conferences it must rest on claims of equal protection of the laws. It cannot be said that a taxpayer relies on the internal procedures of IRS, even if they have become known to private tax attorneys, since a criminal violation will already have taken place, and it is unlikely that the taxpayer's actions would have been affected by the right to explain them in a conference. Nor can it be asserted that a taxpayer is denied due process by the absence of a pre-indictment conference, for his rights at trial will be fully protected.

Defendant Goldstein relies on United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) for the necessity of following agency regulations, and on United States v. Heffner, 420 F.2d 809 (4th Cir. 1970), and United States v. Leahey, 434 F.2d 7 (1st Cir. 1970), for the binding force of IRS rules even though they are not mandated by statute.

The *Accardi* case was very different from the case before us. It involved deportation, where the allegation was that the Board of Immigration Appeals failed to exercise its own discretion because the Attorney General had informed it that petitioner was on a list of persons the Attorney General wanted deported. The case has nothing to do with conditions precedent to a grand jury indictment. Petitioner there did not have the protection of a full trial at the end of the plenary deportation procedure.

The *Heffner* and *Leahey* cases involved instructions to special agents, which provided for *Miranda* warnings before questioning of a taxpayer who was under investigation with respect to possible criminal action. The *Heffner* and *Leahey* cases relate only to the use at trial of statements made at the conferences, not to the grand jury's right to indict the taxpayer. There is a basic distinction, in that questioning without *Miranda* warnings affects a taxpayer's post-offense actions, while indictment without conference does not. As the court said in the *Leahey* case (434 F.2d at 11):

> No one has the right to commit a crime, even if misled by the government as to its enforcement methods.

The *Accardi, Heffner* and *Leahey* cases were distingushed in United States v. Lockyer, 448 F.2d 417 (10th Cir. 1971), where the provision referred to was a section of the Internal Revenue Service Audit Technique Handbook concerning the duty of a Revenue agent to suspend his investigation when he discovers indications of fraud. Although the court there placed some reliance on the fact that the provisions had not been published, the thrust of the decision was that the rule was intended to prevent mistakes by the agent which could result in complicating prosecutions and that it was not available to the taxpayer as a definition of his rights.

■ Defendant's other cases add nothing to his argument. As to his plea for due process, the rule is that the procedural safeguards required by the due process clause vary with the nature of the governmental function involved and the interests to be protected. Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2d Cir. 1970). The stringent safeguards required during a

plenary administrative hearing or when a criminal suspect is being interrogated are not applicable to pre-indictment procedures, since a defendant is assured of all the protective rights which inhere in a jury trial.

The published material outside court decisions tends to support the view that taxpayers have no legal right to a conference. In Kostelanetz and Bender, Criminal Aspects of Tax Fraud Cases (2d ed. 1968), published by the Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association, the authors say (p. 111):

> Some time during the course of the investigation by the special agent, and usually it is good practice as soon as you find out about it, a written demand should be made for a conference at the local Intelligence level before any definite action is taken by that office. A conference here, as well as with the Enforcement Counsel and the Criminal Tax Division of the Attorney General's office, is not a matter of right. Unless you ask for it, you won't get it. Moreover, unless you ask for it, your client's case may move on for criminal prosecution or for that matter civil determination without your knowledge or the taxpayer's whatever. The occasions are frequent where the taxpayer's case is in the criminal tax section of the Attorney General's office before either he or counsel become aware of its transmittal there.

With respect to the benefit a taxpayer may receive from conferences at the Regional Counsel level, the authors say (p. 113):

> The Regional Attorney . . . is a good listener and he will note everything for the record. Most of these attorneys will tell you nothing.

Other articles caution about the risk in giving statements to the Internal Revenue Service at conferences, and comment on the absence of *Miranda* warnings (before the Internal Revenue Service in 1968 directed special agents to give them). Lyon, "Government Power and Citizen Rights in a Tax Investigation," 25 The Tax Lawyer 79, 93, et seq. In Bacon, "How IRS Views the Practitioner's Role in its Criminal Enforcement Program," 34 Journal of Taxation 198 (1971), the author describes the purpose of the review processes in the criminal tax enforcement program as being (p. 200):

> . . . to insure that there is sufficient proof to show guilt beyond a reasonable doubt and that there is a reasonable probability of conviction.
>
> . . .
>
> This procedure, in my opinion, demonstrates realistically the IRS's and the Government's objective in striving for the just result.

Again in Goodrich, Redman and Quiggle, Procedure Before the Internal Revenue Service (3d ed. 1965), the authors point out that the purpose of conferences is more to protect the government against unsuccessful prosecutions than to protect the taxpayer. The description of the various administrative reviews of a case is preceded by the following statement in the text (p. 154):

> Unlike an ordinary tax audit in which complete cooperation with the examining agent is desirable, a case involving potential criminal prosecution poses a very different and difficult question in this regard. The dilemma stems from two conflicting considerations. Although the primary goal in dealing with the special agent is his recommendation against prosecution, it must never be forgotten that, failing that goal, the case is headed for a criminal trial. Thus, what is offered in the hope of obtaining the understanding and favorable recommendation of the special agent may well be precisely enough to fill in his case against the taxpayer and then be extremely prejudicial at the subsequent trial that results from his adverse recommendation. The attitude to be adopted must be chosen before any action is taken.

These publications do not support defendant's contention that a taxpayer is deprived of a substantial right by not being invited to confer with the IRS before he is indicted.

Defendant Goldstein could not have learned much about the government's case at any conference, for he would be given only "a general oral statement of the alleged fraudulent features of the case." The Internal Revenue Manual for "Official Use Only") states in ¶ 9355.3 that

> extreme care must be exercised to ensure that no information is disclosed to the principal which might reveal or indicate the identity of confidential informants, endanger prospective witnesses, or be detrimental to subsequent prosecution of the case.

■ There is no unconstitutional denial of equal protection of the laws in the selection by IRS or any other government prosecutor, of particular cases for prosecution—at least in the absence of invidious class discrimination. In Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), where there was a showing of frequent failure to invoke severer criminal penalties upon habitual offenders, the Court stated (368 U.S. at 456, 82 S.Ct. at 506):

> Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.

See also Moss v. Hornig, 314 F.2d 89, 92–93 (2d Cir. 1963); Breitel, Controls in Criminal Law Enforcement, 27 Univ. of Chi.L.Rev. 427 (1960); Comment, The Right to Non-discriminatory Enforcement of State Penal Laws, 61 Colum.L.Rev. 1103, 1119, et seq.; Miller, Prosecution: The Decision to Charge a Suspect With a Crime (1969) passim.

■ The failure of IRS to use diligence in locating Goldstein after the invitation to a conference was returned, therefore violated no legal right of his.

■ No evidentiary hearing on IRS practices is necessary, since the regulations do not confer any legal right to be free of the necessity of defending a grand jury indictment. It is true that a certain number of cases are dropped after each level of administrative conference, but the conferences are primarily for the benefit of the United States, to avoid the expenditure of effort on unfounded prosecution, and not for the benefit of defendants.

### The Grand Jury's Plenary Power

■ The right of a grand jury to indict is not limited by regulations concerning the preliminary procedure to be followed. In Sullivan v. United States, 348 U.S. 170, 174, 75 S.Ct. 182, 185, 99 L.Ed. 210 (1954), the Supreme Court refused to dismiss an indictment even though the prosecuting attorney had proceeded without the authorization of the Attorney General which was required under a Circular Letter of the Department of Justice. The court said that the Circular Letters, which were never published in the Federal Register, were internal "housekeeping" provisions, and that

> Therefore, it is not contended that, aside from the Executive Order and the departmental letter, a grand jury may not consider evidence of crime known to the grand jurors or revealed by their investigation. It is only urged that the Executive Order and the departmental letter limited the action of the grand jury in respect to cases concerning violations of internal revenue laws. We hold that the Order and the letter had no such restrictive effect, and that the grand jury in this case was free to consider the evidence put before it by Government counsel

without authorization from the Attorney General's office in Washington. 348 U.S. at 173, 75 S.Ct. at 185.

Concerning a grand jury's powers, the court in United States v. Bukowski, 435 F.2d 1094, 1103 (7th Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L. Ed.2d 809 (1971), stated:

> The grand jury holds broad powers of inquiry into any conduct possibly violating federal criminal law. . . . It proceeds without need of any prior formal charge against any particular individual.

In United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964) which defendant cites, the court said:

> As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed.

Defendant Goldstein cites United States v. Seeley, 301 F.Supp. 811 (D.R. I.1969), and similar cases in support of the proposition that an indictment may be dismissed for various types of irregularity, but there is no case cited which holds that it may be dismissed because the defendant did not have adequate opportunity to explain his conduct.

■ On the contrary, it has been held that refusal to permit a prospective defendant to present his case to the grand jury, even though not based on any objective standards, sets forth no ground for dismissal of an indictment. United States ex rel. McCann v. Thompson, 144 F.2d 604 (2d Cir. 1944); United States v. Rosen, 259 F.Supp. 942 (S. D.N.Y.1966).

### The Geller-Ceasar Motions

■ Defendant Geller asks that the indictment be dismissed for failure to charge him with a federal offense. It is obviously a federal offense to conspire to defeat the income tax laws or to aid and abet in the filing of fraudulent income tax returns. His argument seems to be based on the theory that it is a violation of the contract clause and the due process clause of the United States Constitution to interfere with the free fixation of compensation for services, and therefore that it is improper to charge in the indictment that certain defendants did "little or no work" for the corporations which deducted their purported compensation. The argument is ingenious but lacking in merit. A deduction taken in bad faith is a tax fraud even though it is cloaked as an employment contract.

■ The attack on portions of the indictment as surplusage is also lacking in merit. The government is not required to limit the indictment to those allegations which are indispensable to the proof of a crime.

### The Factoroff Motion

■ Defendant Factoroff requests that the indictment be dismissed against him because he was inadequately advised of his rights as a potential "target" before being questioned by the grand jury. The asserted facts may relate to the admissibility of his grand jury testimony, a matter not now determined, but they do not affect the validity of the indictment. The court accepts the statement of the United States Attorney that there was other evidence before the grand jury which would support the indictment. The case of Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964), which defendant Factoroff cites, arose on an appeal from the conviction and not on a motion directed to indictment and is not pertinent here.

### The Jacobson Motion

■ Defendant Jacobson has moved to dismiss the indictment for lack of speedy prosecution and possible violation of the statute of limitations. It does not appear that any counts are barred by the statute of limitations since the earliest return mentioned in the indictment was due on January 15, 1966 and the indictment was returned within six years thereafter. 26 U.S. § 6531. None of the defendants having

been arrested before the indictment, and all defendants having joined in the request at the pre-trial hearing on January 28, 1972 that the trial be set for September 5th, there has been no denial of speedy trial.

It is ordered that the motions of defendants Goldstein, Kessler, Ceasar, Jacobson, Geller, and Factoroff to dismiss the indictment be denied, and that the motion of defendant Geller to strike out portions of the indictment be also denied.