DOROTHY E. WALLACE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Wallace v. Commissioner
Docket Nos. 1191-73, 4829-74.
United States Tax Court
T.C. Memo 1976-219; 1976 Tax Ct. Memo LEXIS 184; 35 T.C.M. (CCH) 954; T.C.M. (RIA) 760219; July 13, 1976, Filed Michael M. Ushijima, for petitioner. Joel V. Williamson, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: These consolidated cases were assigned to and heard by Special Trial Judge Randolph F. Caldwell, Jr., pursuant to Rules 180 and 182, Tax Court Rules of Practice and Procedure. The parties have filed no exceptions of law or fact to Special Trial Judge Caldwell's report… The Court agrees with and adopts his opinion which is set forth below. REPORT OF SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax under section 6651(a) and 6653(a) of the Internal Revenue Code of 1954, [1] for years and in amounts *187 as follows: Additions to Tax Years
Docket Nos.
Deficiencies
Sec. 6651(a)
Sec. 6653(a)
1968
1191-73
$ 726.89
$ 181.72
$ 36.34
1969
1,428.03
357.01
71.40
1970
4829-74
1,201.11
300.28
60.06
1971
1,248.54
312.14
62.43
1972
976.57
244.14
48.83
The issues for decision are: 1. Whether respondent properly resorted to the net worth plus nondeductible personal expenditures method (hereinafter, "net worth method") for determining petitioner's income for each of the years. This issue turns upon whether respondent's use of the net worth method, in the absence of attempting to obtain petitioner's books and records through use of an administrative summons under section 7602, constituted a denial of due process.
2. Whether the telephone expense for each year, included by respondent among petitioner's nondeductible personal expenditures, was excessive. 3. Whether the net proceeds from the settlement of a lawsuit received by petitioner in 1970, should have been treated by respondent as a nontaxable source of funds. Petitioner *188 contends that such proceeds were excludable from gross income under section 104(a)(2). 4.Whether moneys paid to petitioner by the Fayette County (Ohio) Welfare Agency in each of the taxable years for furnishing board and room to a welfare recipient are subject to self-employment tax under section 1401. 5. Whether petitioner is liable for the imposition of an addition to tax under section 6651(a), for each of the years. 6. Whether petitioner is liable for the imposition of an addition to tax under section 6653(a), for each of the years. 7. If, as a result of the disposition of the above six issues, petitioner is found to be liable for any deficiency or addition to tax, then is such liability to be voided for the reason that: (a) "The administration and enforcement of the Internal Revenue Code of 1954, Subtitle A -- Income Taxes, §§ 1-1564 by the Internal Revenue Service Is Violative [of] Title 18 U.S.C. §§ 241, 242, 371, 2381, 2382, 2383, 2384, and 2385." [2]
(b) "The Delegation by Congress of the Power to Lay and Collect Taxes to the Internal Revenue Service Constitutes an Unconstitutional Delegation *189 in that the Delegation Was Not Accompanied by Standards, Principals [sic] or Policies Which Would Have Provided a Framework Within Which the Internal Revenue Service Could Conduct Itself, and When Broadened by the Powers Vested in the Internal Revenue Service by Virtue of the Administrative Procedures Act, 5 U.S.C. §§ 501-576 (1946), Allows Apparent Restriction." [3]
(c) "Internal Revenue Code Is Unconstitutional as a Denial of Equal Protection Under the Fifth Amendment of the United States Constitution." [4]
FINDINGS OF FACT A great many of the facts have been stipulated. The several stipulations of fact, together with the exhibits identified therein, are incorporated herein by this reference. Petitioner is a single widowed individual who resided with her son, Jeffrey, in Washington Court House, Fayette County, Ohio, at the time she filed her petitions in these cases. During the taxable years, and ever since 1944, petitioner operated as a sole proprietor a business known as the "Kozy Beauty Shop" in her personal residence. There were no employees *190 of such business other than petitioner. During each of the taxable years, petitioner received income from her operation of the beauty shop. Also during each of the taxable years, petitioner received income from the Fayette County Welfare Agency for furnishing room and board to Laura Caro, a welfare recipient. Petitioner had filed timely Federal income tax returns for each of the years 1962 through 1967, which returns contained appropriate entries on an item-by-item basis from which petitioner's income and income tax liabilities could be correctly determined. In late 1968 and continuing through 1972, petitioner was involved in a protest movement against the Internal Revenue Service, the Internal Revenue Code, the United States Government, and the income tax. Based on strongly felt religious and personal beliefs and in reliance on information she had been given by individuals and sources whom petitioner believed to be better informed and better educated than she, petitioner protested the activities of the United States Government as regards its support of foreign governments and forces which she believed to be hostile to the United States Government and to the people of the United *191 States and their attitudes in general. Petitioner was advised in many of her activities and aided in the preparation of the protest materials which she sent to the Internal Revenue Service by other individuals throughout the country. Petitioner manifested her protest through letters sent to public officials, legislators, and judges. She made her protests to the Internal Revenue Service in the form of return forms and attachments thereto (presently to be described) which she sent to the Service. She did not attempt to hide her protest in any way, and consistently conveyed the basis of her protest to all Internal Revenue Service agents and officials who contacted her. In implementation of her protest, on April 13, 1970, April 15, 1970, April 5, 1971, April 12, 1972, and April 14, 1973, petitioner forwarded a form 1040 to the Internal Revenue Service Center at Covington, Kentucky, for the years 1968, 1969, 1970, 1971, and 1972, respectively. Each of those forms contained her name and address; those for 1968, 1970, 1971, and 1972 contained her social security number; those for 1968 and 1969 listed her occupation as "cosmetologist"; those for 1968, 1970, 1971, and 1972 had the box *192 marked "Single" checked to indicate filing status; and those for 1968, 1969, 1970, and 1971 were signed and dated. All of the foregoing entries were made in the spaces provided therefor. The taxpayer's oath, appearing above the signature line, was stricken from the 1968 and 1969 return forms. The return forms for 1970, 1971 and 1972, were marked "Under Protest" or "Protest." Various documents were attached to the 1968 and 1969 return forms; while a letter to the District Director at Cincinnati, signed by petitioner, was attached to each of the return forms for 1970, 1971, and 1972. The thrust and purport of all of the documents and letters so attached to the return forms was that petitioner was refusing to pay income taxes on various religious, constitutional, and political grounds. The return forms for the years 1968 through 1972 contain no entries from which petitioner's income, deductions, credits, or tax liabilities could be computed. At the time petitioner sent each of such return forms to the Internal Revenue Service, she was aware of the requirements regarding the proper filing of Federal income tax returns. Revenue Agent Donald Campbell, in or about September 1971, *193 contacted petitioner relative to the examination of her return forms for the years 1968 and 1969. He requested petitioner to furnish books and records relative to her operation of the beauty shop. Petitioner refused to furnish Agent Campbell any such books and records. Petitioner at no time made any such books and records available. Agent Campbell thereupon proceeded to compute petitioner's taxable income by the net worth method, due to the absence of petitioner's books and records. His computation was based on information secured from numerous third parties. Thereafter, a second computation of petitioner's net income was prepared, apparently by another revenue agent whose identity is not established in the record, for the years 1970, 1971, and 1972. Subsequently, in preparation for trial, the parties prepared a computation by the net worth method, covering all five years, which has been introduced into evidence as Joint Exhibit 42-AP. The assets, liabilities, depreciation reserves, nondeductible personal expenditures, and nontaxable sources of funds included in that revised computation (with certain modifications thereto contained in the second and third supplemental stipulations) *194 have been stipulated to be correct in all save two respects: (1) the amount of the nondeductible personal expenditures for telephone, and (2) the failure to include as a nontaxable source of funds to petitioner in 1970 the net proceeds which she received from the settlement of a lawsuit. A comparison of the original net worth method computations and the revised net worth method computation embodied in Joint Exhibit 42-AP (with its modifications) reveals that most of the items in such original computations have been stipulated to be correct. During each of the years 1968 through 1972 petitioner had one telephone line and two telephone instruments at her residence. Petitioner used such telephones for both business and personal purposes, and her son, Jeffrey, also used such telephones for his own personal calls. Petitioner maintained no written records or logs relative to business calls made during any of the years involved. During the 12-month period from October 1969 through September 1970 petitioner paid $522.27 to the telephone company for services to the telephones in her home: $195.06 for local service, $325.81 for long-distance tolls, and $1.40 for calls in excess of the *195 specified allowable number in April 1970. Petitioner paid $331.62 for telephone service to her home in 1972. The record does not permit a breakdown of that sum into the amounts for local service and those for long-distance tolls. Respondent determined that petitioner's nondeductible personal expenditures for telephone service were as follows: $411.27 for each of the years 1968 and 1969; and $360 for each of the years 1970, 1971, and 1972. During late 1969 and extending into 1970, petitioner was involved in a dispute with a local bank involving defamation of character, mistakes of accounting, and incorrect references concerning credit. The local bank had mistakenly represented to creditors of petitioner that petitioner's account was insufficient as regards certain checks drawn on the account and as regards her credit standing. That dispute gave rise to a defamation suit against the bank and its vice president, claiming damages to petitioner's trade and business and her reputation in connection therewith for the bank's failure to honor a $68 check.Petitioner's defamation suit was settled during 1970 and prior to trial, with a payment by the bank to petitioner of $4,000, of *196 which petitioner's attorney was paid the sum of $2,000 as and for attorney's fees. Paragraphs III, V, and VIII of the complaint filed by petitioner read as follows: III. Plaintiff is, and at all times here mentioned was, engaged in the business of operating a Beauty Shop and in connection therewith must purchase a large part of her supplies and business equipment and must operate generally on credit and that a good credit rating of plaintiff is essential to her business and general reputation. * * * * *
V. On November 5, 1969, Plaintiff, in the course of her said Business, drew a check in the sum of $68.00 whereby she directed said Defendants to pay to the Order of Columbus Motor Car Co., from whom Plaintiff regularly contracted work done and materials furnished on her Car, and delivered said check to said Columbus Motor Car Co.
* * * * *
VIII. By reason of the premises Plaintiff suffered great harm to her trade and business and to her reputation in connection there with all to her damage, generally and specially in the sum of $100,000.00 and punative [sic] in the sum of $100,000.00. OPINION The first issue is whether respondent's failure to *197 utilize the administrative summons procedure provided by section 7602 to attempt to obtain any books and records petitioner may have had, prior to resorting to the net worth method of computing her income, worked a denial of procedural due process. It is not believed that it does. In the first place, section 7602 does not require the use of the administrative summons; it only authorizes such use.It reads, in here material part: "the Secretary or his delegate isauthorized * * * (2) To summon the person liable for tax * * * to appear before the Secretary or his delegate * * * and to produce such books, papers, records, or other data * * *." In the second place, what respondent did do appears to have been reasonable, proper, in accord with precedent, and not calculated to work a denial of procedural due process. Petitioner was the sole proprietor of her beauty shop business, and section 6001 required her to keep records with respect thereto and to "comply with such rules and regulations *198 as the Secretary or his delegate may from time to time prescribe." Regs. 1.6001-1(e) provides that the books and records shall be kept at all times available for inspection by authorized internal revenue officers or employees.Thus, when Agent Campbell requested that petitioner produce her books and records and she refused to do so and when the administrative summons was not employed, then some indirect method of computing her income had to be utilized, absent availability of her books and records. He resorted to the net worth method, which led him to records maintained by third parties. "Under that method the increase in net worth (without including any unrealized gains) during the taxable year, after making appropriate adjustment for such items as nontaxable portions of capital gain, tax-free receipts (e.g., gifts and inheritances), depreciation, and unallowable deductions (e.g., living expenses and Federal income taxes paid), may be taken as evidence of a taxpayer's net income for such year." Morris Lipsitz,21 T.C. 917, 931; affd. (4th Cir.) 220 F.2d 871; *199 cert. denied 350 U.S. 845. The utilization of such method, which gives evidence of a taxpayer's income and whose use has been sustained in countless cases, cannot, it is believed, be treated as working a denial of due process. Respondent's resort to use of the net worth method should be sustained. The second issue concerns the amount of personal telephone expense which should be added to the increase in net worth for each year as a nondeductible personal expenditure. The respondent's determination is presumptively correct and the burden was on the petitioner to prove error therein. Welch v. Helvering,290 U.S. 111, 115; cf. Schira v. Commissioner, (6th Cir.) 240 F.2d 672, 674, affirming a memorandum opinion of this Court. Petitioner's contention is that one-half of the total amounts expended for the telephone service to her home, which served both business and personal uses, was for business use, with only the other half for personal use, in contrast to the 80 percent personal use determined by the respondent. She produced no logs or records to corroborate her estimates. The issue is a factual one. After carefully considering *200 the evidence, it is believed that respondent's determination should be approved for each of the years 1968 through 1971. However, for the year 1972, the evidence establishes that the total telephone expense was only $331.62. Accordingly, for that year, petitioner's nondeductible personal expenditure for telephone should be only $265.30, rather than $360 as determined by respondent. The third issue is whether petitioner had a nontaxable source of funds in the net proceeds she received in settlement of her defamation suit against her local bank. If those proceeds were nontaxable, then they should have been deducted from her income for 1970 determined by the net worth method. Petitioner asserts that the settlement proceeds are nontaxable by virtue of section 104(a)(2). That section provides, as follows: SEC. 104. Compensation for Injuries or Sickness (a) In General. -- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include-- * * * * * *201 (2) The amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; This Court has held that defamation suit settlements come within the meaning of damages for personal injuries under section 104(a)(2). Dudley G. Seay,58 T.C. 32. Cf. C. A. Hawkins,6 B.T.A. 1023. However, a settlement which represents a recovery of lost profits is not excludable from gross income. Chalmers Cullins,24 T.C. 322.This Court said in the Cullins case: The taxable nature of the sum recovered in settlement of petitioners' claims is dependent upon the nature of the claims. It is well established that "since profits from business are taxable, a sum received in settlement of litigation based upon a loss of profits is likewise taxable; but where the settlement represents damages for lost capital rather than for lost profits the money received is a return of capital and is not taxable." Durkee v. Commissioner,162 F.2d 184, 196, *202 and cases cited therein; and Raytheon Production Corporation, v. Commissioner,144 F.2d 110, certiorari denied 323 U.S. 779. [24 T.C., p. 327]. Cf. Dudley G. Seay,supra, p. 37. Examination of the complaint filed leads to the conclusion that petitioner's claim was for injury to her personal and business reputation, rather than for any loss of profits from her beauty shop business. Insofar as the settlement proceeds were for injury to petitioner's personal reputation, they would be excludable in their entirety from gross income. However, insofar as the settlement proceeds were for injury to her business reputation, they would be analogous to a loss of good will, a capital asset. In the Cullins case, supra, p. 328, this Court pointed out that the taxpayers there had failed to establish their cost or basis of any capital asset, such as goodwill, which was allegedly lost, and that proof of the cost of any capital asset which might be involved was necessary because recovery in excess of cost constitutes income. In the present cases, besides there being no evidence fragmenting the settlement proceeds between damages *203 for injury to personal reputation and those for injury to business reputation (i.e., loss of goodwill), petitioner, on whom the burden of proof rested, has failed to prove any cost or other basis for goodwill. Consequently, the entire net proceeds were properly includible in her 1970 income, and respondent did not err in not treating such proceeds as a nontaxable source of funds to petitioner in that year. The fourth issue presents the narrow question whether the amounts paid to petitioner by the Fayette County Welfare Agency for room and board which petitioner furnished to Laura Caro, a welfare recipient, are subject to selfemployment tax under section 1401. Petitioner, with the burden of proof upon her, did not present any evidence that would permit a breakdown of the total payments into the portions for rent on the one hand (which is not subject to self-employment tax, see Regs. 1.1402(a)-4) and the portions for furnishing food and care (which are subject to self-employment tax). In that circumstance, the entire amounts of the payments must be held subject to self-employment tax. The fifth issue is whether petitioner is liable for the additions to tax under section 6651(a). *204 That statute provides that in case of failure to file a return or pay taxes, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, an addition to tax shall be imposed. Two questions are presented: (1) Did the return form documents, fully described in the Findings of Fact, constitute returns within the meaning of the Code; and (2), if not, was petitioner's failure to file returns or pay taxes due to reasonable cause and not due to willful neglect? With regard to the first question, petitioner relies on Vaira v. Commissioner,444 F.2d 770, in contending that the return form documents were returns, while respondent relies on United States v. Porth,426 F.2d 519, certiorari denied 400 U.S. 824, in contending that they were not. It is believed that the Porth case is square authority for holding that the return form documents did not constitute returns. (It may be noted in passing that Mr. Porth was a member of the same protest movement as petitioner, and that she conferred with him frequently.) The Court of Appeals said, in upholding the taxpayer's conviction for failing to file a return: *205 (426 F.2d, p. 523): The return filed was completely devoid of information concerning his income as required by the regulations of the IRS. A taxpayer's return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations adopted by the Commissioner [Citing cases.] The Vaira case affirmed the decision of this Court that an unsigned return is not a return. The Court of Appeals was not faced with the question whether a signed return containing no information from which the tax liability could be computed is a return, and of course it did not pass upon such a question. However, on the authority of the Porth case, petitioner's return documents were not returns within the meaning of section 6061, and petitioner must be held not to have filed a return for any of the years 1968 through 1972. That leads to the second question under this issue, whether such failure to file returns or failure to pay taxes was due to reasonable cause and not *206 due to willful neglect. To avoid imposition of the additions to tax under section 6651(a), petitioner must establish both reasonable cause and lack of willful neglect. It is not disputed that petitioner knew of her obligation under the law to file an income tax return for each of the years in issue, and that she knew how to prepare and file such returns. Yet, she took the course of action which has just been shown to amount to failure to file a return for any of those years. It is believed that such failure was due to willful neglect. Petitioner urges that her action was based upon her belief that the payment of income taxes would undermine the supremacy of the Constitution as the supreme law of the land, because the moneys derived from such payment were being expended for purposes which she deemed to be inconsistent with the Constitution. That argument is, it is believed, without merit. Those grounds should not constitute reasonable cause for her failure to file returns and pay taxes. Petitioner could have done both without compromising her beliefs and principles.The filing of returns, *207 in and of itself, would not be at variance with her beliefs and principles; and if she had paid her taxes, she could, of course, have maintained a suit for refund in either the appropriate United States District Court or in the Court of Claims. In either of those forums she could have advanced her constitutional objections. It is believed that petitioner should be found liable for the additions to tax under section 6651(a). The sixth issue is whether petitioner is liable for the additions to tax under section 6653(a), which provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, an addition to tax will be imposed. The determined underpayment of tax for each year results, of course, from the same failure to pay that was involved in the previous issue. The underpayment was due to petitioner's intentional disregard of rules and regulations requiring her to file returns and pay the tax, and accordingly, the additions to tax under section 6653(a) should be imposed. Her involvement in the protest movement coupled with *208 her constitutional objections to the payment of taxes furnish no excuse for her failure to pay, which directly resulted in the underpayments here involved. Cf. United States v.Malinowski,472 F.2d 850 (3d Cir. 1973) and Crowe v. Commissioner,396 F.2d 766 (8th Cir. 1968). Under the seventh issue, petitioner seeks to avoid liability for the deficiencies and additions to tax flowing from the disposition of the first six issues, on one or more of three grounds, which have been set forth in the statement of the issues. The first ground is that the administration and enforcement of Subtitle A of the Code by the Internal Revenue Service is violative of certain specified sections of Title 18 of the United States Code, which is the criminal code. This ground is without merit. The Tax Court has only the limited power to redetermine the deficiencies and additions to tax. Burns, Stix Friedman & Co.,57 T.C. 392, 396. It has no power to determine whether violations of criminal statutes, under an entirely different title and having *209 nothing to do with taxes, have taken place. The record contains no evidence that any personnel of the Internal Revenue Service have ever been even indicted, much less convicted, under any of the criminal code provisions mentioned by petitioner. It will be time enough to pass upon the question of whether a conviction for a violation of one of these sections is sufficient to avoid a taxpayer's liability for taxes, when such a conviction has been obtained. Such a question is not passed upon here. The second ground under the seventh issue presents petitioner's contention that the delegation by Congress of the power to lay and collect taxes to the Internal Revenue Service constitutes an unconstitutional delegation in that it was not accompanied by standards, principles, or policies which would have provided a framework within which the Internal Revenue Service could conduct itself. Petitioner further contends that when such delegation to the Service is coupled with the powers vested in the Service by the Administrative Procedure Act, the delegation allows the Service to legislate without apparent restrictions. The Constitutional provisions alleged to have been infringed are Article *210 I, section 1, and Article I, section 8, clause 1. The Supreme Court in Brushaber v. Union Pacific RR. Co.,240 U.S. 1 (1916), held that Congress could constitutionally delegate to the Secretary of the Treasury the authority to administer the income tax laws, and that such delegation was not an unwarranted delegation of Congress' legislative function. The Court stated: We have not referred to a contention that because certain administrative powers to enforce the act were conferred by the statute upon the Secretary of the Treasury, therefore it was void as unwarrantedly delegating legislative authority, because we think to state the proposition is to answer it. [240 U.S., at p. 26]. Section 7805 of the Code provides that the Secretary of the Treasury or his delegate shall prescribe all needful rules and regulations for the enforcement of Title 26 of the Code. Because this authority is allegedly not accompanied by any reasonable standards, petitioner argues that the Internal Revenue Service is thereby enabled to usurp Congress' legislative function in the tax field. Petitioner challenges only Congress' grant of authority under section 7805 *211 and not any specific rules and regulations as being beyond Congress' grant of authority. It is not believed that this aspect of petitioner's second ground is meritorious. Congress having validly confided the administration and enforcement of the Internal Revenue Code to the Secretary of the Treasury or those under his supervision (section 7801), it appears perfectly reasonable, even necessary, for the Secretary to have been given the power in section 7805 to prescribe "all needful rules and regulations" for the enforcement of the Code's provisions. The Courts have consistently held that the regulations he prescribes are valid unless unreasonable or inconsistent with the statute; and that "they constitute contemporaneous construction by those charged with the administration of the act, are for that reason entitled to respectful consideration, and will not be overruled, except for weighty reasons." Fawcus Machine Co. v. United States,282 U.S. 375; see also Commissioner v. South Texas Lumber Co.,333 U.S. 496; Helvering v. Winmill,305 U.S. 79. *212 But the regulations must be consistent with the statute to which they apply, and when they have been found not to be so, the courts have not hesitated to strike them down. See, for example, United States v. Cartwright,411 U.S. 546, holding invalid a regulation prescribed under section 2031. As stated above, petitioner has not challenged the validity of any specific regulation. Her attack on the device of the regulation itself must fail. Petitioner's third ground presents her contention that the Internal Revenue Code is unconstitutional as a denial of equal protection under the 5th Amendment. In Allen F. Labay,55 T.C. 6, affd. (5th Cir.) 450 F.2d 280, in rejecting the taxpayers' contention that denials of dependency exemption deductions under sections 151 and 152 could result in a denial of their rights under the due process and equal protection clauses of the 5th and 14th Amendments, this Court said: Congress has the power to condition, limit, or deny deductions in arriving at the net income it chooses to tax. Helvering v. Ind. Life Ins. Co.,292 U.S. 371 (1934). *213 While the due process clause of the 5th Amendment is applicable to Federal tax statutes, Heiner v. Donnan,285 U.S. 312, Congress is given great leeway, and a Federal taxing provision is not violative of the due process clause of the 5th Amendment unless it classifies taxpayers in such a manner as to be arbitrary and capricious. Petitioner suggests only two arguments alleging such "arbitrary and capricious" classification as to her, neither of which it is believed has merit. First, she points out that the Commissioner has treated as a nondeductible personal expenditure $525 which she expended on gas and electric bills. On brief, her counsel then goes on to argue: Another citizen or resident of this country might spend $525 for gas and electric charges on his home and deduct some percentage of this expenditure as a business expense, although reaping no greater benefits from the gas and electric services and supplies than petitioner. This provides unequal treatment as regards all persons spending certain sums on certain services and goods. The obvious reason for allowing the hypothetical taxpayer to deduct a portion of his utilities bills, is that the deductible *214 portion represents a business expense. Surely the distinction between business expenses (deductible) and personal, living, or family expenses (nondeductible) is, far from being arbitrary and capricious, a reasonable one. Indeed petitioner has been, in effect, allowed a portion of her telephone bills as a business expense on the very ground that the deductible portion was an expense of her beauty shop. And, if she had alleged and proved whatever portions of her utilities bills were allocable to her business, she would have been allowed those portions too. Petitioner also urges that she was probably the only taxpayer in Ohio against whom it was sought to enforce the liability for Federal excise tax on telephones. On brief, her counsel states: Thousands of citizens across the United States protested the payment of the Federal excise tax and refused to pay it. It is obvious that few, if any, of these thousands of protestors were threatened with seizure of any property or confronted by several Revenue Agents threatening seizure of property. Passing the points that the Federal telephone excise tax is not involved in the present cases and the total absence from the record of *215 evidence showing that thousands of taxpayers protested this tax with impunity while petitioner was subjected to collection activities, the law is well settled that the mere fact that some individuals escape enforcement of particular laws does not render enforcement of those laws against other violators unconstitutional. Oyler v. Boles,368 U.S. 448; United States v. Goldstein,342 F. Supp. 661, reversed and remanded on other grounds, 479 F.2d 1061, certiorari denied 414 U.S. 873; Greenberg'sExpress, Inc.,62 T.C. 324, 328. None of the three grounds advanced by petitioner in support of her position on the seventh issue justifies avoiding her liability for deficiencies and additions to tax under sections 6651(a) and 6653(a). In accordance with the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. Petitioner's Brief, Point VI, p. 19.↩
3. Petitioner's Brief, Point VII, p. 24.↩
4. Petitioner's Brief, Point VIII, p. 30.↩