**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence L. GHIDONI,
Defendant-Appellant.**

**No. 84–3101.**

United States Court of Appeals,
Eleventh Circuit.

May 2, 1984.

W. Dexter Douglass, Tallahassee, Fla., Edward M. Booth, Lamar Winegeart, III, Jacksonville, Fla., for defendant-appellant.

Glenn L. Archer, Jr., Michael L. Paup, Asst. Attys. Gen., Robert E. Lindsay, Alan Hechtkopf, Laurens Tullock, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellee.

Before HENDERSON, ANDERSON and CLARK, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this appeal, we consider whether the defendant, Lawrence Ghidoni, can invoke the Fifth Amendment to justify his refusal to sign a consent directive that would enable the government to obtain records from a Cayman Islands bank. The district court ordered Ghidoni to execute the directive.[1]

---

1. The consent directive states:

I, LAWRENCE L. GHIDONI, of the State of Florida in the United States of America, do hereby direct any bank or trust company at which I have a bank account of any kind or at which a corporation has a bank account of any kind upon which I am authorized to draw, specifically including The Bank of Nova Scotia and The Bank of Nova Scotia Trust Company (Cayman) Limited, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relate to the said

bank accounts to any attorney of the United States Department of Justice, and to give evidence relevant thereto, in the case of the *United States of America v. Lawrence L. Ghidoni*, Case No. TCR 83–07016, now pending in the United States District Court for the Northern District of Florida, and this shall be irrevocable authority for so doing. This direction has been executed pursuant to that certain order of the United States District Court for the Northern District of Florida in the aforesaid case, dated December 30, 1983. This direction is intended to apply to

Ghidoni refused, arguing that compelled execution of the directive would violate his right against self-incrimination. The district court rejected the claim and found Ghidoni in contempt. We affirm.

## FACTS

On October 5, 1983, the grand jury for the Northern District of Florida returned an indictment charging Ghidoni with four counts of willful tax evasion, in violation of 26 U.S.C. § 7206(1). The indictment alleged that Ghidoni, as an individual and through his wholly-owned Florida corporation, had in 1976 and 1977 engaged in a scheme whereby income from building material sales to foreign purchasers was diverted to accounts with the Bank of Nova Scotia in the Cayman Islands. The allegedly diverted income was not reported on the corporation's tax returns for those years. Nor did Ghidoni report on his individual return alleged distributions from the corporation to him. Ghidoni maintains that neither he nor his corporation control any Cayman Island bank accounts and that distributions to him from accounts there were loans from foreign clients.

In furtherance of its investigation, the government issued a subpoena to the Miami, Florida, branch of the Bank of Nova Scotia, commanding production of bank records relating to Ghidoni's accounts. In

negotiations with the government, bank officials expressed concern that production of these records would subject bank employees to criminal liability under the Confidential Relationships (Preservation) Law of the Cayman Islands.[2] The bank suggested that problems with the Cayman Island law could be avoided if Ghidoni would execute a directive consenting to disclosure. Accordingly, the government obtained the district court order compelling Ghidoni to sign the directive, and Ghidoni's refusal to do so led to the finding of contempt now on appeal.

## DISCUSSION

The Fifth Amendment provides individuals with a privilege against self-incrimination. A violation of that privilege occurs when "the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). *See United States v. Authement*, 607 F.2d 1129, 1131 (5th Cir.1979)[3] (articulating the three factor test of (1) compulsion, (2) testimonial communication, and (3) incrimination). The district court order in the instant case obviously compels the defendant to sign the consent directive; the only issue we consider is whether signing the form is testimonial communication. Because we hold that Ghidoni makes no testimonial communication in signing the

---

the Confidential Relationships (Preservation) Law of the Cayman Islands, and shall be construed as consent with respect thereto as the same shall apply to any of the bank accounts for which I may be a relevant principal.

**2.** Confidential Relationships (Preservation) Law (Law 16 of 1976), as amended (Law 26 of 1979) states in § 4 that:

(1) Subject to the provisions of sub-section (2) of section 3, whoever—

(a) being in possession of confidential information however obtained;

(i) divulges it; or

(ii) attempts, offers or threatens to divulge it to any person not entitled to possession thereof;

  \*   \*   \*   \*   \*   \*

is guilty of an offence [sic] and liable on summary conviction to a fine not exceeding $5,000 or to imprisonment for a term not exceeding 2 years or both.

Section 3, however, states:

(2) This Law has no application to the seeking, divulging, or obtaining, of confidential information—

(a) in compliance with the directions of the Grand Court pursuant to section 3A;

(b) by or to—

(i) any professional person acting in the normal course of business *or with the consent, express or implied, of the relevant principal;*

(emphasis added).

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

form, we need not address the incrimination element.[4]

■ At the outset, we emphasize that Ghidoni has not asserted, nor could he argue, that the contents of the bank records are eligible for protection under the Fifth Amendment. It is well-established the bank records are not protected from disclosure by any constitutional privilege. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d 812 (1974) ("a party incriminated by evidence produced by a third party sustains no violation of his own Fifth Amendment rights").[5] Rather, Ghidoni's assertion of privilege centers on the alleged testimonial and incriminating aspects of his compelled signing of the directive.

In this vein, the Supreme Court has recognized that a Fifth Amendment privilege can, under the proper facts, attach to the mere act of producing certain documents.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with this subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.... The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and

"incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and the circumstances of particular cases or classes thereof.

*Fisher v. United States*, 425 U.S. at 411, 96 S.Ct. at 1581 (citations omitted). *See United States v. Miller*, 660 F.2d 563, 566 (5th Cir.1981) (Unit B)[6] (discussing *Fisher* and noting that the testimonial aspects of production have three facets—testimony with respect to existence, possession or control, and authentication), *vacated as moot*, 685 F.2d 123 (5th Cir.1982) (Unit B).

In *Fisher*, the Court recognized that in some situations the act of producing business records prepared by an accountant could have the above-mentioned testimonial implications, but held that the Fifth Amendment was not violated by a production of those records in a case in which the existence of the records and the defendant's possession or control were a "foregone conclusion." *Id.* at 411, 96 S.Ct. at 1581. The government was not relying on the "truthtelling" of the taxpayer, or any "testimony" involved in the act of production, to prove the existence of the records or the taxpayer's access to them. *Id.* Furthermore, the Court held that the Fifth Amendment was not involved because authentication of the records produced was to be made by the accountant and not the defendant. *Id.* at 413, 96 S.Ct. at 1582.

The facts in *United States v. Doe*, —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552

---

**4.** The dissent asserts that the consent directive "is unquestionably incriminating, in that it furnishes a link in the chain leading to the procurement of documents that the government intends to use to secure Ghidoni's conviction." *Infra* at 821. We do not necessarily disagree, but because we find no incriminating *testimony* in the contents of the directive or the fact that Ghidoni must sign, we need not address the incrimination element.

**5.** The United States courts have the power to obtain the records held by a foreign branch of any bank doing business in the United States, *see In re Grand Jury Proceedings (United States v. Bank of Nova Scotia)*, 691 F.2d 1384, 1388–89

(11th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983), and "foreign bank secrecy laws provide no privacy rights for U.S. citizens that are not otherwise present under the Constitution and laws of the United States." *United States v. Payner*, 447 U.S. 727, 732 n. 4, 100 S.Ct. 2439, 2444 n. 4, 65 L.Ed.2d 468 (1980).

**6.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

(1984) led to a contrary holding on the testimonial aspects of production. In *Doe,* the Court deferred to a district court finding that a sole proprietor's compelled production of business records under subpoena would attest to the existence, possession or control, and authenticity thereof. The Court in *Doe* thus held that even though the contents of the records were not privileged, the act of production could not be compelled under the Fifth Amendment.

■ In the instant case, Ghidoni argues that signing the directive would have testimonial aspects, *i.e.,* would be an implicit assertion that the Cayman Island bank accounts existed, were authentic, and that he controlled them. He further argues that these three elements are currently in dispute, and therefore that his compelled signing would be testimony attesting to these elements and would form an incriminating link assisting the government in meeting its burden of proof.[7]

■ The district court, in holding Ghidoni in contempt, found the consent directive in the instant case devoid of any testimonial aspects. We agree.

Although the existence of the bank accounts may be in dispute, nothing in the directive implies that such accounts exist. Rather, the directive states that *if* the accounts exist, the bank is permitted to disclose records of those accounts to the government. *See supra* note 1. As in

*Fisher,* the government here is in no way relying upon the "truthtelling" of the taxpayer's directive to show the existence of the accounts. 425 U.S. at 411, 96 S.Ct. at 1581. We conclude that the directive contains no implicit testimony that the records do in fact exist.

The second element, possession or control, also is in dispute. Again, the directive makes no explicit statement regarding Ghidoni's control of the accounts. Rather, the directive merely permits the bank to disclose information relating to any accounts with respect to which the *bank records* indicate Ghidoni's authority to draw (*i.e.,* any accounts with respect to which the bank *thinks* Ghidoni has authority). Ghidoni has denied control over any accounts with the bank and the directive does not contradict this testimonial assertion.[8] We conclude that the directive contains no implicit testimony with respect to control.

Because the directive contains no statement by Ghidoni on either control or existence of the accounts, the directive could not be used by the government as an admission thereof.[9]

Finally, Ghidoni argues that the directive would tend to authenticate any documents obtained from the bank. In this regard, this case is indistinguishable from *Fisher,* where the government was seeking records prepared by an accountant for the defendant. Because the taxpayer could not authenticate the accountant's work papers or

7. Ghidoni also argues that his signing the consent directive would constitute a due process violation by forcing him to make a false communication. He asserts that his signature, evincing consent to the bank's disclosure, would be a sworn misstatement because he does not consent to disclosure. *See United States v. Ward,* No. 81–1–CR–J–B (M.D.Fla. April 6, 1981) (memorandum opinion denying motion to execute forms). Ghidoni's argument borders on frivolous. The consent directive is perfectly clear in stating that Ghidoni is signing under the compulsion of the court order. *See supra* note 1. With the grounds for his "consent" so stated, we hold that the directive does not compel a misstatement and does not create a due process violation.

8. In other words, we read the directive as equivalent to a statement by Ghidoni that, although

he expresses no opinion with regard to the existence of or his control over any such accounts, he is authorizing the bank to disclose information relating to accounts which, in the bank's opinion (or with respect to which the bank records indicate), Ghidoni controls.

9. In concluding that the government could not use the directive, we are not affording Ghidoni any "constructive immunity" regarding subsequent use of the directive. The Supreme Court opinion in *Doe* makes clear that the judiciary cannot afford subsequent "use" immunity in the absence of a formal request by the Department of Justice under 18 U.S.C. §§ 6002 and 6003. —— U.S. at —— & n. 16, 104 S.Ct. at 1244 & n. 16. Rather, we simply hold that the directive in the instant case lacks any probative testimonial value on the issue of control or existence.

reports by oral testimony, the Court held that the taxpayer's production of those accounts would not assist in authentication. 425 U.S. at 413, 96 S.Ct. at 1582. Similarly, only the bank could authenticate the records at issue here. *Compare United States v. Doe,* —— U.S. at ——, & n. 15, 104 S.Ct. at 1244 & n. 15 (mere production by sole proprietor, who prepared records himself, would authenticate records).

In affirming the district court's finding that the instant directive is not testimonial or incriminating, we are further persuaded by distinctions between this case and *Doe.* The subpoena duces tecum in *Doe* required the taxpayer, a sole proprietor, to produce certain records in his possession, thereby establishing existence, possession or control, and authenticity, and removing the taxpayer's ability to present arguments to the contrary. Conversely, Ghidoni has to produce only a directive, which contains no testimony regarding the existence of bank accounts or his control of them. The account records, if they exist, are held by the bank and any testimony on the existence, control, or authentication elements of the records would have to come from the records themselves and the bank officials. After executing the directive, Ghidoni can still maintain that the records do not exist, that he does not control them, and that they are not authentic.[10] These factors demonstrate the nontestimonial nature of the consent directive.[11]

**10.** His position on these issues would likely run up against the clear existence of the records and the probable bank testimony that Ghidoni controlled the accounts and the records were authentic. Nevertheless, no testimonial statement in the directive contradicts his current position regarding the accounts.

**11.** This case is also distinguished from *Doe* on the basis of the underlying district court finding. In *Doe,* the district court had concluded as a factual matter that the sole proprietor's compelled production of records was testimonial and incriminating. The Supreme Court, without expressing its own view on these issues, deferred to the lower court finding, which had been affirmed by the court of appeals. —— U.S. at —— & n. 11, 104 S.Ct. at 1243 & n. 11. Conversely, the district court in the instant case found that the directive was not testimonial.

We find further support for our holding in several cases in which a defendant has been compelled to perform acts against his will. The Supreme Court, finding no Fifth Amendment violation, has upheld the compulsion. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (compelled consent to give handwriting exemplar); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice exemplar).[12]

In summary, we conclude that compelling Ghidoni to sign the directive would not violate Ghidoni's Fifth Amendment privilege against self-incrimination. The directive is not testimonial in nature. Accordingly, the district court contempt order is

AFFIRMED.

CLARK, Circuit Judge, dissenting:

The fifth amendment condemns compelled, incriminating testimony. The majority opinion permits what is therein condemned. When the government orders an individual to produce incriminating documents in his possession, testimony may be divulged from two different sources: first, the act of producing the documents may testify as to their existence and authenticity; second, the documents themselves are unquestionably communicative and as such are testimonial. *Fisher* and *Doe,* however, teach that while the documents themselves may be testimonial, they are not entitled to

**12.** We disagree with the dissent's suggestion that this case is more like the handwriting exemplar cases than the act of production cases. The handwriting cases do provide significant support for our holding in that they approve a compelled consent to provide, for example, a handwriting exemplar. However, we also see an even closer analogy between those cases in which a person is required to consent to produce documents himself, and the instant case in which Ghidoni is required to waive a barrier to permit the bank to produce documents. The issue is whether the act compelled is testimonial. For the reasons set forth, we have concluded that the compelled act in this case provides no testimony with respect to the existence, possession or control, or authentication of the documents.

fifth amendment protection to the extent they were prepared voluntarily and thus were not compelled. Consequently under the factual circumstances of those cases, the exclusive focus of a court's concern in addressing the self-incrimination aspects of an order to produce documents must be on the act of producing those documents.

In contrast, when a suspect is ordered to sign a confession or to furnish a handwriting exemplar, the focus shifts away from the act of producing the writing and toward its contents. The act of signing a confession or providing a handwriting sample does no more than communicate the truism that the author can write and that what he has provided in his handwriting. *Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39, 56 (1976). It is the communicative value of what is written above his signature that is important. Thus, coercing a suspect to evince his guilt by signing his name to the statement "I confess," compels incriminating testimony and is therefore forbidden.

On the other hand, compelling a handwriting exemplar is generally permissible, insofar as the writing produced is nothing more than a non-testimonial, physical means of identification, like a fingerprint or a voice sample. *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (voice exemplar). Put another way, voice and handwriting samples are demonstrative rather than testimonial evidence; a suspect may even be compelled to say or write words or phrases that have independent communicative value, if it is the physical characteristics of the handwriting or voice that are sought and not the meaning of the words spoken or written. *Matter of Grand Jury Proceedings*, 579 F.2d 1135 (9th Cir.1978). The Supreme Court has made it clear that if the writing is sought not only for its physical charac-

teristics but also for its content, the fifth amendment prohibits its compulsion:

> [T]he Government's petition for the order to compel production stated: "Such exemplars will be used solely as a standard of comparison in order to determine whether the witness is the author of certain writings." If the Government should seek more than the physical characteristics of the witness' handwriting— if, for example, it should seek to obtain written answers to incriminating questions or a signature on an incriminating statement—then, of course, the witness could assert his Fifth Amendment privilege against compulsory self-incrimination.

*United States v. Mara*, 410 U.S. 19, 22, 93 S.Ct. 774, 776, 35 L.Ed.2d 99, 103 (1973).[1]

In this case, Ghidoni is not being ordered to produce documents but to sign his name, which presents a situation closer on its facts to *Gilbert* and *Mara*, the exemplar cases, than to the production of documents cases, *Fisher* and *Doe*. Ghidoni is being ordered to sign a statement authorizing any foreign bank with which he has an account to release his records to the government upon demand, records which the government could not obtain without his "consent." The act of signing the consent form, as with a handwriting exemplar, provides the government with no more than the truism that Ghidoni can write, and that what he has furnished is his signature. On the other hand, unlike a handwriting exemplar, the contents of the "consent" form are a communication that may produce testimony that will be incriminating.

The government is seeking "more than the physical characteristics of the witness' handwriting." *Mara*, 410 U.S. at 22, 93 S.Ct. at 776, 35 L.Ed.2d at 103. Rather, it is seeking to "obtain ... a signature on an incriminating document." *Id.* As the consent form is worded, Ghidoni does not concede that any foreign account exists, or that any records a foreign bank may have

---

**1.** For example, in *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, 915 (1966), the Court said: "It is clear that

the protection of the privilege reaches an accused's communications, whatever form they might take ..."

are genuine. But that is beside the point. Ghidoni is not being asked to produce bank records, and so the testimonial aspects attendant to compelling the act of producing such records, articulated in *Doe*, are irrelevant here. We are concerned not with the act of producing records or the act of signing a consent form, but with the substance of the consent form itself, which communicates to all banks presented with the form: "I consent to have you release any account information you deem applicable to me."

Such a statement, obtained under the circumstances presented here, constitutes compelled testimony. That testimony is unquestionably incriminating, in that it furnishes a link in a chain leading to procurement of the documents that the government intends to use to secure Ghidoni's conviction. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 815, 818, 95 L.Ed. 1118, 1124 (1951). I do not believe that the fifth amendment tolerates compelling a criminal suspect to sign an incriminating consent form any more than it tolerates compelling him to sign a confession. I therefore dissent.