**In re GRAND JURY 83–8 (MIA) SUBPOENA DUCES TECUM Directed to Alfredo Martin and Gabriel Hernandez.**

No. 83–8.

United States District Court, S.D. Florida.

Jan. 15, 1985.

Philip T. Weinstein, Miami, Fla., for respondents.

Charles S. Saphos, Asst. U.S. Atty., Atlanta, Ga., for the government.

## ORDER AND MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION TO COMPEL

ARONOVITZ, District Judge.

The United States seeks an order compelling Alfredo Martin and Gabriel Hernandez to produce before the Grand Jury for the Southern District of Florida certain documents which are the property of AGH Investments Corporation (hereinafter "AGH"). Martin, President and Director, and Hernandez have been served with subpoenae but have invoked the Fifth Amendment in support of their refusal to produce the requested documents. The Court has carefully examined the government's Motion to Compel, the Witness-Respondents' Memorandum of Law in opposition thereto, the applicable law, and has heard the argument of counsel at a hearing which took place before the Court on October 12, 1984. The parties are in agreement as to the factual background of the case. At the aforementioned hearing, the Court invited counsel to present evidence. The parties, however, did not come forward with witness testimony or other evidence, and instead delivered oral argument solely on the questions of law which are presented.

## FACTUAL BACKGROUND

On or about December 14, 1982, a subpoena was served upon Gabriel Hernandez calling for records of AGH Investments Corporation. At that time, Hernandez refused to answer on constitutional grounds all questions, but handed over a quantity of documents and made the following statement:

"On Tuesday, December 14, 1982, a government agent came to my attorney's office and served me two papers which turned out to be subpoenas. These folders which I am producing, contain all items called for in those subpoenas, which are in my possession or control, or which were in my possession or control at the time of service. The items are numbered to correspond with the list attached to the subpoena. Anything not produced, is not in my possession or control, nor was it when the subpoena was served."

After that date, there was considerable correspondence between the United States Attorney's Office and the two witnesses through their counsel, with respect to the subject matter of the investigation. On or about July 14, 1984, two special agents of the Internal Revenue Service (having previously called for an appointment), went to the office of counsel to the two witnesses and delivered a second subpoena directed to Gabriel Hernandez. The agents also stated that another subpoena for Mr. Martin would be delivered at a later date. On July 17, 1984, the two special agents revisited counsel for the two witnesses' office

and delivered a subpoena directed to Martin.

On both visits to counsel's office, the agents indicated that both Hernandez and Martin were, and continued to be, the primary targets of a Grand Jury investigation. Hernandez and Martin have each received a "target letter" as well as an "advice of rights" advising them that they are subjects of an investigation for income tax evasion and violations of "Title 21", presumably the narcotics laws.

On August 9, 1984, the return day on the subpoenae, Martin and Hernandez appeared before the Grand Jury. Martin carried nothing into the room, gave his name, address and name of his attorney. As to all other questions, he answered:

> "I respectfully decline to answer that question or to deliver anything, on the grounds that my answer may tend to incriminate me and I base my refusal on my Fifth Amendment privilege against self-incrimination."

Martin was questioned as to whether he was the custodian of records of AGH Investments Corporation, how he was associated with AGH, and whether he had brought with him and would produce the records called for in the subpoena. The appearance of Hernandez was substantially the same, and Hernandez invoked the Fifth Amendment when asked a similar set of questions. Hernandez, however, carried with him a package wrapped in brown kraft paper, approximately $12'' \times 9'' \times 4''$ and marked on the outside "Box A". In addition to the questions which were asked Martin, Hernandez was asked what was in Box "A", and whether he would turn over Box "A" to the Grand Jury.

Attached to the two subpoenae is a "Form 19 Corporate Records Subpoena Attachment" which seeks, in sixteen numbered paragraphs, the production of ledgers, journals, and general business records of AGH Investments Corp. At the hearing on October 12, 1984, the Court called the parties' attention to the fact that the subpoenae were addressed to Gabriel Hernandez and Alfredo Martin individually, and

without reference to their representative or corporate capacities. The parties then stipulated that service on each of the witnesses was intended to be in their respective official capacities as custodians of the records of AGH Investments Corp. Counsel for the parties by stipulation made the appropriate changes on the two documents.

## THE GOVERNMENT'S NEED FOR AUTHENTICATION

As Hernandez turned over corporate documents pursuant to a subpoena which was issued in December, 1982, the question arises whether he waived his right to invoke the Fifth Amendment with respect to the second subpoena which was served on July 14, 1984. Since it is clear that the government through its second subpoena seeks different or new documents, in addition to those which were produced under the first subpoena, the Court need not reach the question of waiver. It appears material, however, that production having already occurred as to one set of corporate documents, the government seeks to compel Hernandez, and not a third party, to turn over the documents requested in the second subpoena. Indeed, the government admitted in open court at the October 12, 1984 hearing that it requires the testimony of Hernandez and Martin about the documents, and it requires Hernandez and Martin personally to produce the documents, in order to establish the authenticity of the documents for use in subsequent proceedings. The government indicated that such testimony and/or act of production would be its sole means of authenticating the documents.

As Martin and Hernandez have each received a Grand Jury "target letter" and "advice of rights" notice, such subsequent proceedings may include a criminal action or actions against Martin and/or Hernandez individually. The second subpoena served on Hernandez, and the subpoena served on Martin, then, implicate certain rights and values which are embodied in the Fifth Amendment.

In producing and/or testifying about the AGH documents which are sought by the government, Hernandez and Martin may assist and contribute to the government's criminal case against them individually. Although the documents themselves obviously were not created under any government compulsion, the subpoenae which seek their production therefore give rise in Martin and Hernandez to a reasonable apprehension of self-incrimination. The question presented, however, is whether their reasonable apprehension of self-incrimination is within the scope of protection afforded by the Fifth Amendment, even though the subpoenae are addressed to Hernandez and Martin only in their capacities as representatives of the corporation.

## THE GOVERNMENT'S MOTION TO COMPEL

The United States in support of its motion relies on a long line of cases which hold that the Fifth Amendment does not extend to the contents of business records. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Wheeler v. United States*, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). As corporate records are created voluntarily, there is little concern that they may be unreliable, and there is no compulsion element with respect to their contents. Moreover, since a corporation is a "person" only by virtue of a legal fiction, it is clear that compelling a corporation to produce business records implicates few of the societal values and concerns which the framers embodied in the Fifth Amendment. *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944).

The Fifth Amendment establishes a privilege which inheres to *persons*, and, as Justice Murphy stated in the *White* case, *supra:*

> "[I]ndividuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather, they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination."

*Id.* at 1251.

As a corporation may not utilize the personal privilege against compulsory self-incrimination, "it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege." *Bellis, supra*, 94 S.Ct. at 2184. The government argues that Martin and Hernandez therefore may not invoke the Fifth Amendment in opposition to the two subpoenae, because they are being asked to produce documents which were voluntarily created by the corporation, and whose contents are beyond the purview of the Fifth Amendment. Because they are being so asked in their representative capacities, as custodians of the corporate records, the government contends that under *White* and *Bellis, supra*, Martin and Hernandez may only assert, in response to the two subpoenae, the rights and privileges of the corporation, and such rights and privileges do not include the Fifth Amendment guarantee against compulsory self-incrimination against themselves individually.

## THE WITNESSES' RESPONSE

Martin and Hernandez, while recognizing that the line of cases which the government cites does not extend the Fifth Amendment to the contents of business records, rely mainly upon the Supreme Court's opinion in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) in support of their claim of Fifth Amendment protection. The witnesses argue that *Doe* "overruled decades of precedent" in two regards: First, *Doe* held that the business records of a sole proprietor should not be treated any differently from the records of a corporation and that therefore the Fifth Amendment does not protect the contents of a sole

proprietor's records. Second, *Doe,* according to the witnesses, announced a "new rule" with respect to the production of business records that the act of production and authentication itself have testimonial aspects which might be protected by the Fifth Amendment. Martin and Hernandez argue that since AGH is a close corporation, the "new rule" of *Doe* should extend to the instant case—as a sole proprietor should not be forced to authenticate documents where such authentication may contribute to the government's criminal case against him, the records custodian of a small, closely held corporation should not be treated any differently, simply because the subpoena is addressed in a representative capacity.

At oral argument, the government in response relied mainly on *Bellis, supra,* for the proposition that the rule in *Doe* about the act of production should not extend to a situation where a witness appears in a representative capacity for a corporation. *Bellis* involved a law partnership which, though small, had an institutional identity. Since the Fifth Amendment has always been "limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records," *White, supra,* the witness in *Bellis* was not permitted to invoke the Fifth Amendment because he was subpoenaed only in his capacity as a partner of the law firm. Moreover, the Court in *Bellis* specifically held that "no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Bellis, supra,* 94 S.Ct. at 2189.

### ANALYSIS

To a large extent, the Court agrees with the government's conclusions and disagrees with the witnesses' position that *Doe* announces a "new rule" with respect to the act of production and authentication. Where a witness claims that he is being asked by the State to incriminate himself, the Court must start of course with the Fifth Amendment itself. Almost two hundred years of interpretation and analysis of that great safeguard of civil liberties still has not worked to cut it "loose from the moorings of its language." *Fisher, supra,* 96 S.Ct. at 1576. In pertinent part, the Amendment provides:

"No person ... shall be compelled in any criminal case to be a witness against himself."

 Since it is only "himself" that a person may not be compelled to incriminate, the Fifth Amendment "was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he [may be] the agent of such person ..." *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 377, 50 L.Ed. 652 (1906). It is also clear that the Fifth Amendment was not intended to proscribe the compelled production of every sort of incriminating evidence, "but applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Fisher, supra,* 96 S.Ct. at 1579. The privilege thus does not extend to the giving of blood samples, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); to the giving of handwriting exemplars, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); voice exemplars, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); or the donning of a blouse worn by the perpetrator, *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

 The act of producing evidence in response to a subpoena, however, does have testimonial aspects of its own, wholly apart from the contents of the papers produced. *Fisher, supra,* 96 S.Ct. at 1581. As the Supreme Court stated in *Fisher:*

"Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [individual]. It also would indicate the [individual's] belief that the papers are those described in the subpoena. *Curcio v. United States* [354 U.S. 118] 77 S.Ct. 1145 [1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly

present, but the more difficult issues are whether [these] tacit averments ... are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment."

*Id.* at 1581.

■ The rule regarding the act of production in *Doe* is thus not a "new rule" at all. While compliance with a subpoena to produce documents thus has long been considered potentially to have testimonial aspects in itself, the question whether such an act of production is within the purview of the Fifth Amendment does not lend itself to a categorical answer. Its resolution may instead "depend on the facts and circumstances of particular cases or classes thereof." *Id.* at 1581. In the case *sub judice*, the government has admitted that it requires not merely the records of AGH, but also Martin and Hernandez *producing* the records because it would have no other means of authenticating the documents. The "testimonial" aspect of compliance with the subpoenae is thus the very reason why the government has submitted its motion to compel.

As used against the corporation, the government's argument has merit. Under the cases, including *Doe,* the Fifth Amendment does not permit the witnesses to avoid production or authentication of the documents by such production when used in "subsequent proceedings." In analyzing the testimonial aspects of production for use in subsequent proceedings wherein the *same* evidence is sought to be used against the individuals who have been "compelled" to authenticate the documents, however, the possibility of "incrimination" is equally as clear. Both Hernandez and Martin have received grand jury "target letters" and "advice of rights" notices. There is little doubt that the government hopes to use the AGH corporate documents in subsequent criminal proceedings against Hernandez and Martin.

The act of producing as well as testifying about the documents which the government seeks in the two subpoenae, if permitted to be used in subsequent proceedings against the individuals, would involve testimonial self-incrimination. This, therefore, leaves the government in the posture of having a right to the production of the documents for use against the individuals in subsequent proceedings, but only if authenticated through other evidence.

In light of *Fisher,* if the two subpoenae were issued to Martin and Hernandez in their individual and personal capacities, it is thus clear that since AGH (its corporate identity aside) is a third party, Martin and Hernandez could not invoke the Fifth Amendment with respect to the contents of the records, but would be afforded Fifth Amendment protection as to the act of production and compliance with the subpoenae. The only real question which is presented, then, is whether that Fifth Amendment protection is somehow negated simply because Martin and Hernandez have been served in their capacities as representatives of a corporation, rather than in their individual and personal capacities.

A review of the relevant cases reveals that it is not so negated. In *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), which was decided after the *White* case, *supra,* the secretary-treasurer of an International Brotherhood of Teamsters Local union was subpoenaed to appear before the grand jury to testify about, and to produce, the union's books and records. The subpoenae were addressed to Mr. Curcio not in his individual capacity, but in his official capacity as secretary-treasurer of the Local. The witness refused to produce the records, and refused to testify as to their whereabouts, claiming that the act of production and his answers to the questions might incriminate him. As in the instant case, the government in *Curcio* argued that the *White* case holds that an individual, *when subpoenaed as representative of a collective group,* can never assert his personal privileges, but is entitled only to the rights of the entity for which he is an agent. Since corporate or institutional entities have no Fifth Amendment rights, the government argued that Mr. Curcio could not invoke the Fifth

Amendment because he was subpoenaed as custodian of the union's books and records. The Supreme Court disagreed. After referring to *White* and many of the same cases on which the government relies in the case *sub judice,* the Court stated:

"There is no hint in these decisions that a custodian of corporate or association books waives his constitutional privilege as to oral testimony by assuming the duties of his office."

*Id.* at 1150.

With respect to the Grand Jury's questioning about the documents, the Court upheld the witness's claim of the Fifth Amendment privilege. With respect to the testimonial aspects of the act of production, the Court held that there was little danger of self-incrimination, because the documents had already been produced. The Court, however, recognized that the act of production might be likened to oral testimony:

"The custodian's act of producing books or records in response to a *subpoena duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. *Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself.*"

*Id.* at 1150 (emphasis supplied).

In the case *sub judice,* the act of production by Martin and Hernandez would be the equivalent of testimonial self-incrimination. *Curcio* is thus squarely on point, and provides clear authority in support of the witnesses' claim.

The more recent decision in *Doe* is also relevant. The Supreme Court in *Doe,* however, divides its opinion into two parts. In Part A, the Court addresses the *contents* of a sole proprietor's business records, and cites *White, Bellis,* and *Fisher* as authority for the "new rule" that since such records are voluntarily created by a third party, the business, a sole proprietor may not invoke the Fifth Amendment as to their contents. In Part B, however, the Court specifically states that "although the contents of a

document may not be privileged, the act of producing the document may be." *Doe, supra,* 104 S.Ct. at 1242. In this second part of the opinion in *Doe* where the Court addresses the testimonial aspects of the act of production, it makes no mention of *Bellis* or *White,* and does not indicate that the Fifth Amendment protection against self-incrimination is somehow negated because the subpoena might be addressed to the witness in his representative capacity. As stated above, in *Curcio,* the case which the Court cites in *Fisher* and *Doe* as authority for the proposition that the act of production might itself be protected by the Fifth Amendment, the witness was subpoenaed in his representative capacity as custodian of records and secretary-treasurer of a union local.

More recently than *Doe,* the Eleventh Circuit Court of Appeals examined whether the signing of a consent directive that would enable the government to obtain certain bank records could be compelled under the Fifth Amendment. *United States v. Ghidoni,* 732 F.2d 814 (11th Cir.1984). The defendant in *Ghidoni* conceded that the bank records were not protected by any constitutional privilege, but argued that signing the consent directive was an "act of production" which was itself incriminatory. In affirming the district court's conclusion that such an act was neither "testimonial" nor "incriminating" under the facts of the case, the Eleventh Circuit distinguished *Ghidoni* from the situation involved in *Doe* and *Fisher.*

The case *sub judice* must be distinguished from *Ghidoni.* In *Ghidoni,* the Defendant was only required to produce a directive which contained no testimony regarding the existence or control over the bank records which the government sought. The Court pointed out that the records, "if they exist, are held by the bank and any testimony on the existence, control or authentication elements of the records would have to come from the records themselves and the bank officials." *Id.* at 819. In the instant case, the government has no means of establishing the authenticity of

the AGH corporate documents other than by compelling Martin and Hernandez to produce them.

## SUMMARY

Where the government seeks the production of documents which were created by a sole proprietorship, corporation, or other collective entity by way of a subpoena addressed to a representative, official, or records custodian, certain principles regarding the Fifth Amendment must be carefully considered. With respect to the *contents* of the records, there are sound reasons why no Fifth Amendment protection may be claimed by the business or entity, or by the official or representative, even where the records may incriminate the business or the official from whom the government seeks production.

First, as the Supreme Court noted in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the contents of business records are usually created voluntarily; there is no compulsion element with respect to the preparation of corporate financial documents and the like.

Second, since the business or sole proprietorship is not a natural person, it is clear that the framers never intended such an artificial entity to be entitled to the Fifth Amendment's protection against self-incrimination, when it attempts to assert the privilege on its own behalf. Rather, the privilege "is an intimate and personal one. It respects a private inner sanctum of individual feeling and thought ..." *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973).

And third, since the Fifth Amendment only protects a person from incriminating *himself*, the business official or representative may not refuse to produce business records in his possession or control, because such records were created by a third party (the fact aside that the third party could not claim the privilege in its own behalf). *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

■ Where the official's testimony about the documents, or where the official's act of producing the documents might have "testimonial" and "incriminatory" elements with respect to the business official in his individual and personal capacity, however, the Court must carefully consider whether compliance with the subpoena would implicate the Fifth Amendment. *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *United States v. Ghidoni*, 732 F.2d 814 (11th Cir.1984). This is true even if the subpoena is addressed to the official in his representative capacity because in accepting his duties as officer or custodian of records, a person does not thereby waive the rights and privileges which are guaranteed by the Fifth Amendment. *Curcio, supra*, 77 S.Ct. at 1150.

In light of *White, Bellis*, and the first part of *Doe*, it is clear that as to the *contents* of the documents which the government seeks in the two subpoenae, the Motion to Compel would be granted over the witnesses' claim of Fifth Amendment privilege, even if the documents would incriminate them in their individual and personal capacities, as well as incriminate the corporation. At oral argument, however, the government made clear that through its motion it seeks an order compelling Martin and Hernandez to produce and thereby authenticate the documents. In light of *Curcio, Fisher*, and the second part of *Doe*, however, the government may not use such authentication and testimony about the documents against Martin and Hernandez in any subsequent proceedings brought against them in their individual capacities.

■ It should be emphasized, however, that under *White* and *Bellis* the witnesses' legitimate claim of protection under the Fifth Amendment does not extend to the corporation. Artificial entities have no such privileges, and the government may

use any testimony about the documents, as well as the authentication implicit in the act of their production, in subsequent proceedings brought against the corporation.

■ Insofar as the government seeks to use the act of production and testimony about the documents by Martin and Hernandez in subsequent proceedings against the corporation, the Motion to Compel therefore is GRANTED.

■ Compelled self-incrimination, however, implicates deeper concerns than its sheer unreliability as evidence, and strikes a deeper chord. The roots of the privilege "tap the basic stream of religious and political principle because the privilege reflects the individual's attornment to the state and—in a philosophical sense—insists upon the equality of the individual and the state." *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967). To the extent that the government's motion seeks to compel Martin and Hernandez to assist the government in preparing its criminal case against them individually, the Motion to Compel is DENIED. Under the Fifth Amendment, the government may not compel Martin and Hernandez to authenticate and testify about the documents where such authentication and testimony would be used in subsequent criminal proceedings against them in their individual and personal capacities.

■ Because the contents of the documents are not subject to the same privilege, however, the government may use fully the documents against Martin and Hernandez in any subsequent criminal proceeding, if it authenticates the documents by a means other than testimony or the act of production by Martin and/or Hernandez.

Thereupon, it is ORDERED AND ADJUDGED that the government's Motion to Compel be, and the same is hereby, GRANTED IN PART and DENIED IN PART, subject to the restriction on the use of testimony about the documents, and the authentication of the documents implicit in the act of their production, as discussed herein.