**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**EDWARD O'BRIEN, BARBARA O'BRIEN and O'BRIEN PLUMBING CO., INC., Defendants**

v.

**BANK OF NOVA SCOTIA, Intervenor**

Criminal Nos. F68/1984, F69/1984 and F70/1984

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 9, 1985

KEVIN REILLY, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for plaintiff*

FREDERICK G. WATTS, ESQ., St. Thomas, V.I., *for defendants*

GEORGE H. T. DUDLEY, ESQ., St. Thomas, V.I., *for intervenor*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### INTRODUCTION

In its judgment entered herein, this court noted that certain novel issues were raised in various pre-trial motions filed by the parties,

and that its oral rulings thereon would be supplemented in writing. This opinion constitutes that supplementation.

The issues presented were: (1) whether in a prosecution for income tax evasion, this court is empowered to compel the local branch of a foreign bank to produce the taxpayers' bank records located in other foreign branches; (2) whether, in a prosecution for income tax evasion, this court may compel taxpayers to sign consent directives authorizing their foreign depository bank branch to disclose those foreign bank records of the taxpayers to the Virgin Islands Government; and (3) whether the Virgin Islands Internal Revenue Bureau is compelled to follow verbatim the administrative procedures of the United States Internal Revenue Service prior to prosecution of defendants for income tax evasion. For the reasons stated below, the court resolved the first two issues in the affirmative and the third issue in the negative.

## FACTS

Defendants Edward and Barbara O'Brien are husband and wife who are domiciliaries of St. Thomas, Virgin Islands and are engaged in the plumbing business. He is the President and sole stockholder of the defendant plumbing corporation. The defendants do their banking with the Intervenor, Bank of Nova Scotia, which is headquartered in Toronto, Canada, and has branches in many countries, including the U.S. Virgin Islands, the British Virgin Islands and the Cayman Islands. The record establishes that the parent bank in Toronto exercises full control over the activities and internal affairs of its branches.

Defendants were charged by information with eighteen (18) counts of attempted income tax evasion and willfully filing false income tax returns for the taxable years 1978 through 1980. The charges resulted from an investigation into the affairs of the Department of Public Works with whom defendant O'Brien Plumbing Company, Inc. had a contractual relationship. The investigation was conducted by various local and federal agencies and culminated in the filing of these criminal tax fraud charges by the Virgin Islands tax division. The administrative procedures of the Federal Internal Revenue Service were not applied by the Virgin Islands tax agents in the processing of this case. Specifically, there was no conference or review before the criminal charges were filed.

During the investigation, it was alleged that deductions were taken by defendant corporation for payments allegedly made to fic-

titious suppliers. In order to trace the payments in question, the government requested subpoenas duces tecum for defendants' bank records with the branches of the Bank of Nova Scotia located in the U.S. Virgin Islands, the British Virgin Islands and the Cayman Islands. The subpoenas were issued by this court and were served on the St. Thomas branch of the Bank of Nova Scotia demanding the records of all three branches. The bank produced the records from the St. Thomas branch and agreed to produce those from the Cayman Islands and British Virgin Islands branches if defendants signed consent directives for the bank's protection from the banking laws of those jurisdictions.

Because defendants refused to execute the consent directives, the Government filed its Extraordinary Motion to Compel defendants to do so, and the bank filed its motions to intervene and to quash those subpoenas. Additionally, because the Virgin Islands tax agents did not apply the federal administrative procedures, the defendants moved to suppress all information obtained during the investigation, and to dismiss the charges on the basis of due process violations.

## DISCUSSION

### I.

The subpoena power of the Territorial Court in criminal matters is derived from the general grant of jurisdiction over offenses against the Virgin Islands. Rev. Org. Act of 1954, Sec. 23; 4 V.I.C. §§ 75, 76(b). In addition, 4 V.I.C. § 77 provides that the practice and procedure in the Territorial Court shall be as prescribed by rules adopted by the District Court of the Virgin Islands. The rules of the District Court provide, among other things, that the practice and procedure in the Territorial Court shall conform as nearly as may be to that in the District Court in like causes, except where there is an express provision in the law or the rules to the contrary. 5 V.I.C. App. IV, R. 7. Since the Federal Rules of Criminal Procedure are applicable in the District Court, and since there are no laws or rules to the contrary, those rules are also applicable to this court. Thus, Rule 17 of the Federal Rules of Criminal Procedure also defines this court's subpoena power and its geographical reach. Specifically, it provides that a subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the United States. F.R.Crim.P. 17(e)(1). Since the Virgin Islands is part of the United States and since the Bank of Nova Scotia has a branch doing business in this territory, that branch is clearly subject to the

subpoena power of this court. Tuky Air Transport v. Edinburgh Insurance Co., 19 V.I. 238 (1982). Indeed, it has long been established that a state or territory may exercise judicial authority over an individual who is physically present within its borders permanently or temporarily. Restatement (Second) Conflict of Laws, § 28 (1971). See also, International Shoe Co. v. Washington, 336 U.S. 310, 319 (1945); Worldwide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).

The Bank's concern, however, goes beyond the local reach of the court's subpoena power to the court's power to compel production of documents from its branches located in foreign jurisdictions. Specifically, the Bank contends that only "Courts of the United States" as defined in 28 U.S.C. § 451 and certain special courts created by Congress have the power, pursuant to 28 U.S.C. § 1783 et seq., to enforce subpoenas across national boundaries. Since the Territorial Court is not such a court, the Bank contends it cannot compel such production.

■ The court finds this contention to be inappropriate under the circumstances of this case because no subpoenas were issued to the foreign branches. Instead, the subpoenas were served on the local branch over whom the court's jurisdiction is undisputed. Since personal jurisdiction is established over the local branch bank, it can be compelled to obtain all relevant bank records of the taxpayer which is within its power to obtain. As part of the international Scotia Bank network, the local branch can obtain the subpoenaed records through the parent bank in Toronto. Indeed, the parent bank has agreed to supply the subpoenaed information, its only concern being the impact of the secrecy laws of the Cayman Islands. To alleviate this fear, the bank requested and the court ordered the execution of consent directives by the taxpayers. Moreover, where, as here, a parent corporation so controls and dominates a subsidiary as to disregard its independent corporate existence, the judicial power which a court exercises over the subsidiary is also exercisable over the parent.[1] Restatement (Second) Conflict of Laws, Sec. 52. The record is clear that the parent bank in Toronto exercises dominion and control over the activities and internal affairs of the local branch of the Bank of Nova Scotia. Thus, the parent bank, through

---

[1] The court makes no distinction between "Branch" and "Subsidiary" of the bank, since in determining whether a corporation has engaged in activities in a state, it is immaterial whether they were conducted through a branch or a subsidiary. See, Boryk v. Dehavilland Aircraft Co., 341 F.2d 666, 668 (2d Cir. 1965).

the local branch, is subject to the jurisdiction of this court insofar as its subpoena power to obtain the taxpayers' bank records is concerned.

The court therefore holds that in a prosecution for income tax evasion it may compel the local branch of a foreign bank, over whom it has personal jurisdiction, to produce the taxpayers' bank records located in other foreign branches. Accordingly, the intervenor's motion to quash or modify the subpoenas was denied.

## II.

Defendants strongly oppose the execution of the consent directives on the ground that it would be testimonial in nature and violative of their Fifth Amendment privilege against self-incrimination.[2] The Government disagrees, claiming that the signing of the consent directives would not be testimonial since the records sought are owned by and are in the possession and control of the bank, and not the defendants.

At the outset, the court notes that the testimonial privilege against self-incrimination cannot be claimed by the corporate defendant. It is well settled that a corporation is not a person within the meaning of the Fifth Amendment's mandate that no person shall be compelled in a criminal case to be a witness against himself. California Bankers' Association v. Shultz, 416 U.S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d 812 (1984); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 196, 66 S.Ct. 494, 499, 90 L.Ed. 614 (1946). Accordingly, that portion of the Government's motion which sought to compel the consent of the corporate defendant to disclosure could

---

[2] The consent directive for each defendant is identical and provides in pertinent part:

I, Edward O'Brien, ... do hereby direct any bank ... at which I may have a bank account ... upon which I may be authorized to draw, specifically including The Bank of Nova Scotia and the Bank of Nova Scotia Trust Company (Cayman) Limited ... to disclose all information and deliver copies of all documents of every nature in your possession or control which may relate to the said bank accounts to any attorney of the Virgin Islands Department of Law and to give evidence relevant thereto, in the case of the Government of the Virgin Islands v. Edward O'Brien, Barbara O'Brien and O'Brien Plumbing Co., Inc., Criminal Nos. F68/1984, F69/1984, F70/1984 now pending in the Virgin Islands Territorial Court ... and this shall be irreversible authority for so doing. This directive has been executed pursuant to the certain order of the Virgin Islands Territorial Court. This directive is intended to apply to the confidential relationship of the Cayman Islands Confidential Relationship (Preservation) Law and shall be construed as consent with respect thereto as the same shall apply to any bank account for which I may be a revelant principal.

not be objected to by the corporate defendant based on any claim of the privilege in question.

The leading case with respect to consent directives is United States v. Ghidoni, 732 F.2d 814 (11th Cir. 1984); cert. den., 105 S.Ct. 328 (1984). In facts similar to this case, Ghidoni was indicted for income tax evasion. The government sought and obtained the District Court's order compelling him to sign a consent directive authorizing the Miami, Florida branch of the Bank of Nova Scotia to produce his bank records, if any, from the branch bank in the Cayman Islands. Upon refusing to do so, Ghidoni was held in contempt of court and he appealed. The Court of Appeals affirmed the District Court, holding that since the directive was non-testimonial in nature, compelling Ghidoni to sign it did not violate his Fifth Amendment privilege against self-incrimination.

Because the facts in Ghidoni are similar to the facts of this case, this court adopts the Ghidoni rationale. In Ghidoni it was held that the defendant made no testimonial communication in signing the consent directive, thus the court found it unnecessary to address the incrimination element of the three-pronged test, i.e. (1) compulsion, (2) testimonial communication, and (3) incrimination. This court reaches a similar conclusion in the case at bar.

With respect to the compulsion element of the test, it is indisputable that it is sought to compel the individual defendants to sign the consent directives, hence that element of the test is clearly present here as it was in Ghidoni. With respect to testimonial communication, it is settled that the testimonial aspects of production has three facets, i.e. testimony with respect to (1) existence, (2) possession or control, and (3) authentication. Ghidoni, supra at 817, citing United States v. Miller, 660 F.2d 563, 566 (5th Cir. 1981). Defendants argue that signing the directives would have testimonial aspects, i.e. doing so would be an implicit assertion that the records sought existed in the Cayman Islands and British Virgin Islands, and that they controlled them. The court disagrees.

Nothing in the consent directive implies that the defendants actually have bank accounts in the foreign branches. Instead, it states that where such accounts may exist, the bank is permitted to disclose records of those accounts to the government. As in Ghidoni, the government is not relying on the defendants' signature on the directive to establish the existence of any accounts. If none exists, their signatures on the consent directive could not and would not create the existence of such accounts.

■ ■ Similarly, the directive makes no explicit statement regarding the defendants possession or control of the accounts. Indeed, the records are in the possession and control of the bank, and the directive merely permits the bank to disclose information regarding any accounts which defendants have the authority to utilize. It is well-established that bank records are not protected from disclosure by constitutional privilege. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619 (1976). Thus, the production of evidence by a third party, such as the bank, does not constitute a violation of the constitutional rights of one who is incriminated thereby. See, California Bankers' Assn. v. Shultz, 416 U.S. 21, 94 S.Ct. 1949 (1974). Defendants reliance on United States v. Doe, 104 S.Ct. 1237 (1984) is misplaced because in Doe the defendant was compelled to produce his own records not the bank's records, as in this case.

■ Furthermore, execution of the directives would not tend to authenticate the documents obtained from the bank. Since only the bank could authenticate its own records, the defendants' signature on the directive would not constitute authentication of those bank records. The papers and effects which the privilege protects must be the private property of the person claiming the privilege. Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179 (1974). Here, defendants have neither a proprietary nor a possessory interest in the bank records because records of a depositor's account are deemed to be the business records of the bank. The court finds further support for its holding in the following cases in which a defendant has been compelled to perform acts against his will without violating his Fifth Amendment privilege against self-incrimination: Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 (1967), 18 L.Ed.2d 1149 (1967) (voice exemplar). The defendants are not being ordered to produce the records but to remove an obstacle to their production. As criminal defendants within the personal jurisdiction of this court, they cannot lawfully defeat an otherwise valid subpoena by withholding their consent to disclosure of the bank's records.

■ Accordingly, the court concludes that the consent directive is not testimonial, and that compelling the defendants to sign the consent directives does not violate their Fifth Amendment privilege against self-incrimination.

## III.

Defendants contend that the administrative guidelines of the federal Internal Revenue Service are applicable verbatim to the territory, and as such the local Internal Revenue officials must follow the federal procedures. Defendants further claim that they were denied their right to an audit conference and a departmental review prior to the filing of criminal charges, and that therefore all evidence obtained during the investigation must be suppressed, and the case dismissed. In opposition, the Government contends that the I.R.S. administrative procedures are not applicable to V.I. taxpayers, citing as its authority Dudley v. Commissioner of Internal Revenue, 3 V.I. 471 (1957), 258 F.2d 182 (3rd Cir. 1958).

According to the Naval Appropriations Act of July 12, 1921, 48 U.S.C. § 1397:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said Islands.

Consistent with the foregoing, 33 V.I.C. § 1931 provides as follows:

> (15) "Virgin Islands Income Tax Law" means so much of the United States Internal Revenue Code as was made applicable in the Virgin Islands by the Act of Congress entitled "An Act Making Appropriations for the Naval Service for the Fiscal Year Ending June 30, 1922, and for Other Purposes," approved July 12, 1921 (48 U.S.C. § 1397).

The effect of the foregoing provisions of 48 U.S.C. § 1397 and 33 V.I.C. § 1931(15) was to create a separate taxing structure for the Virgin Islands "mirroring" the provisions of the Federal Tax Code except as to those provisions which are incompatible with such a separate tax structure. H.M.W. Industries Inc. v. Wheatley, 504 F.2d 146, 150 (3rd Cir. 1974). It is clear that in addition to "mirroring" Federal Tax Laws, the tax structure also "mirrors" regulations implementing those laws, where it is appropriate to do so. Vitco Inc. v. Government of the Virgin Islands, 560 F.2d 180, 181 (3rd Cir. 1977). It is equally clear, however, that such procedures apply only to the extent that they are compatible with local procedures established for the assessment and collection of taxes. H.M.W. Industries Inc. v. Wheatley, supra.

■■■ Since the local government does not have the administrative heirarchy of the federal government, it is impossible to adopt the appellate and conference scheme which was contemplated by the federal government. Clearly, those administrative procedures are not compatible with local procedures and are therefore not applicable.

There is nothing in the record to indicate that the federal Internal Revenue Service was ever involved in the investigation giving rise to the charges herein so as to have warranted application of their procedures.[3]

■■■ Indeed, the use by the local government of federal officials to assist in various investigations does not make the investigations federal.[4] But even if we were to assume that federal administrative procedures applied verbatim, defendants are not entitled to the conference as contended.

The plain language of the regulations is permissive with respect to such conferences. Furthermore, as noted by the court in United States v. Goldstein, 342 F.Supp. 661, 668 (1972):

> The conferences are primarily for the benefit of the United States to avoid expenditure of effort on unfounded prosecution and not for the benefit of defendants.

■■■ As such, the Goldstein court held, inter alia, that the taxpayer was not deprived of any substantial right by not being invited to confer with the I.R.S. prior to criminal charges being brought. See also, Einhorn v. Dewitt, 618 F.2d 347, 349 (5th Cir. 1980) which holds that the regulation in question is discretionary regarding the furnishing of information from tax investigations. Additionally, there is nothing in the record to indicate that defendants at any time requested a conference. Such a request is clearly a condition precedent to a conference being convened according to the Internal Revenue Service's Handbook for Special Agents which provides in pertinent part:

---

[3] It is quite possible for the I.R.S. to investigate a local resident if it believes that person has not satisfied his U.S. tax obligations by filing locally. The Federal Government has never relinquished its authority over V.I. residents for U.S. Income taxes, merely requiring that they be paid into the local Treasury. Revised Organic Act of 1954, § 28.

[4] In this very case, the local government is being assisted by a tax attorney on loan from the federal government. Even defendants do not consider his presence to make it a federal case.

(1) A district conference will not be conducted as a matter of course. However, a taxpayer who may be the subject of a criminal prosecution recommendation will be afforded a district Criminal Investigation conference when he/she requests one or where the Chief, Criminal Investigation Division, determines that such a conference will be in the best interest of the Government. (See policy statement P-9-32.)

Having failed to request such a conference, defendants cannot be heard to complain that the conference was not held.

The court agrees with the holding in Goldstein and Einhorn and finds that it is impractical at this time to apply the federal administrative procedures in the Virgin Islands.

Accordingly, defendants motions to suppress the evidence and to dismiss the information were denied.

## CONCLUSION

Based on the foregoing the court held that in a prosecution for income tax evasion: (1) the Territorial Court is empowered to compel the local branch of a foreign bank to produce the taxpayers' bank records located in other foreign branches; (2) the Territorial Court may compel taxpayers to sign consent directives authorizing their foreign depository branch bank to disclose those foreign bank records of the taxpayers to the Virgin Islands' government and (3) the Virgin Islands Internal Revenue Bureau is not compelled to follow verbatim the administrative procedures of the United States Internal Revenue Service prior to prosecution of the defendants for income tax evasion.