**SENATE SELECT COMMITTEE ON SECRET MILITARY ASSISTANCE TO IRAN and the Nicaraguan Opposition, Applicant,**

v.

**Richard V. SECORD, Respondent.**

**Misc. No. 87–0090.**

United States District Court, District of Columbia.

April 16, 1987.

Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Morgan J. Frankel, Asst. Senate Legal Counsel, Washington, D.C., for applicant.

Thomas C. Green, Sharp, Green & Lankford, Washington, D.C., for respondent.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter comes before the Court upon the Application of the Senate Select Committee on Secret Military Assistance to Iran and the Nicaraguan Opposition (the Committee). The Committee seeks a Court Order pursuant to 28 U.S.C. § 1364 (1982 & Supp. III 1985)[1] requiring Richard V. Secord to execute a consent directive that would allow any bank holding an account from which he is authorized to draw to disclose information and documents to the Committee pertaining to such account. A copy of the proposed directive is attached hereto. Secord previously refused to com-

1. 28 U.S.C. § 1364 provides:

(a) The United States District Court for the District of Columbia shall have original jurisdiction, without regard to the amount in controversy, over any civil action brought by the Senate or any authorized committee or subcommittee of the Senate to enforce, to secure a declaratory judgment concerning the validity of, or to prevent a threatened refusal or failure to comply with, any subpoena or order issued by the Senate or committee or subcommittee of the Senate ... to any natural person to secure the production of documents or other materials of any kind....

(b) Upon application by the Senate or any authorized committee or subcommittee of the Senate, the district court shall issue an order to an entity or person refusing, or failing to comply with, or threatened to refuse or not to comply with, a subpoena or order of the Senate or committee or subcommittee of the Senate requiring such entity or person to comply forthwith. Any refusal or failure to obey a lawful order of the district court issued pursuant to this section may be held by such court to be a contempt thereof....

ply with an Order of the Committee to sign the directive.

Secord opposes the Committee's application, arguing that forcing him to sign the directive against his will violates his Fifth Amendment privilege against compelled self-incrimination, his Fifth ' Amendment Due Process rights and his rights under the First Amendment. Secord also contends that an extant treaty between the United States and Switzerland regarding the disclosure of information in the context of criminal investigations and prosecutions [2] makes the Committee's Application inappropriate. Because the Court shall hold that it would violate Secord's Fifth Amendment privilege against compelled self-incrimination to order him to sign the directive, his other contentions shall not be addressed.

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." The Supreme Court has enunciated two interrelated interests protected by these words—1) the preservation of "the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load,' " *Tehan v. Shott,* 382 U.S. 406, 415, 86 S.Ct. 459, 464, 15 L.Ed.2d 453 (1965), and 2) the "concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life," ' " *Id.* at 416, 86 S.Ct. at 465. The Fifth Amendment has been called "one of the great landmarks in man's struggle to make himself civilized." *Murphy v. Waterfront Comm'n.,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1963) (citing *Ullmann v. United States,* 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511 (1956) (quoting Griswold, The Fifth Amendment Today (1955), 7)). As the Court stated in *Ullmann v. United States:*

> We are not dealing here with one of the vague, undefinable, admonitory provisions of the Constitution whose scope is inevitably addressed to changing circum-

stances. The privilege against self-incrimination is a specific provision of which it is peculiarly true that 'a page of history is worth a volume of logic.' *New York Trust Co. v. Eisner,* 256 U.S. 345, 349 [41 S.Ct. 506, 507, 65 L.Ed. 963]. For the history of the privilege establishes not only that it is not to be interpreted literally, but also that its sole concern is, as its name indicates, with the danger to a witness forced to give testimony leading to the infliction of 'penalties affixed to the criminal acts....' *Boyd v. United States,* 116 U.S. 616, 634 [6 S.Ct. 524, 534, 29 L.Ed. 746].

*Ullmann v. United States,* 350 U.S. at 438–439, 76 S.Ct. at 506–507.

The scope of the Fifth Amendment privilege is as follows: it "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). In the matter *sub judice* there is no question as to the compulsion element of this requirement; the Committee seeks an Order of the Court forcing Secord to choose between signing the directive or suffering the penalties of civil contempt including possible imprisonment. It is the testimonial nature of the communication and its incriminating effects that present more difficult questions.

### The Testimonial Nature of the Communication

The Committee argues that Secord would make no testimonial communication by signing the directive. This argument, which has been accepted by the Courts in *United States v. Ghidoni,* 732 F.2d 814 (11th Cir.1984); *United States v. Davis,* 767 F.2d 1025 (2nd Cir.1985); and *In re U.S. Grand Jury Proceedings, Cid,* 767 F.2d 1131 (5th Cir.1985), stems from an analogy of the situation presented here to cases in which documents are sought directly from individuals in possession of them. In those circumstances, the Supreme Court has held that the Fifth

---

**2.** Treaty Between the United States of America and the Swiss Confederation on Mutual Assist-ance in Criminal Matters, 27 U.S.T. 2019 (signed May 25, 1973; effective January 23, 1977).

Amendment may attach to the mere production of the documents if there is a testimonial aspect to the production. For example, in *Fisher v. United States, supra,* the Court notes that "(c)ompliance with (a) subpoena tacitly concedes the existence of the papers demanded and their possession or control by" the individual from whom they were subpoenaed. *Id.,* 425 U.S. at 410, 96 S.Ct. at 1580. "It would also indicate" the individual's "belief that the papers are those described in the subpoenas." *Id.* (citing *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957). *See also, United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984).

The Committee argues that in this matter it is seeking bank records, not the testimony of Secord. The directive is merely a tool by which it will be able to obtain the records, the contents of which are clearly unprotected by the Fifth Amendment.[3] Because the directive contains a disclaimer by which Secord would expressly state that the directive "shall not be construed as admission that I am a principal of, or have any authority with respect to, any of the listed entities or their records or accounts," all of the testimonial elements of production which concerned the Court in *Fisher* and *Doe* are removed. In short, the Committee argues that the end result of this procedure will be that it will have Secord's unprotected bank records, and Secord will have been protected from "testifying" that the accounts existed or that they were under his control.

■ The Court sees a fatal flaw in the Committee's analogy. Although the obtainment of documents is the Committee's goal, it is not only the testimonial aspects of producing the documents which are in question here. The Committee is asking the Court to order Secord to place his signature at the bottom of a prepared consent directive. By characterizing the directive as a tool to obtain unprotected bank records, the Committee likens the signing of it to the preparation of a handwriting exemplar, which is clearly non-testimonial. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The difference, however, is that the directive's *content* is what the Committee needs, not a sample of Secord's handwriting. In this case, the content is not only testimonial, but it is also false as far as Secord is concerned.[4] As demonstrated by this proceeding, Secord vigorously contests the disclosure of his bank records. His protests would be of no avail if the Committee had subpoenaed a bank in the United States. The laws of countries such as Switzerland, however, require a bank to obtain the consent of its customers before releasing their records.[5] It is the content of the directive, therefore, which is of vital importance to the Committee in its quest for the records. By signing the directive, Secord would be testifying just as clearly as if he were forced to verbally assert his content. *See In re: Grand Jury Proceedings (William A. Ranauro),* 814 F.2d 791 (1st Cir.1987). The testimonial element of the Fifth Amendment privilege is satisfied.

### Incriminating Effects

The final question which must be resolved to determine whether the communication involved in this matter is protected by the Fifth Amendment is whether the communication could potentially incriminate Secord.

■ To deny a claim of privilege on the ground that the communication sought would not incriminate the witness, a trial judge must be " '*perfectly clear,* from a

---

**3.** There is not dispute that the bank records themselves are not protected. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

**4.** The Committee argues that the directive says "I direct" rather than "I consent," so Secord's statement would not be false. It also notes that the directive states that Secord was compelled to sign it. Although these statements of fact are true, the intention and the language of the directive make it clear that it is to be "construed as consent" on the part of Secord. Directive at Lines 14–15.

**5.** Whether an obviously compelled "consent" would satisfy the bank laws of countries like Switzerland is of no concern to this Court.

careful consideration of all the circumstances in the case, ... that the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1950) (quoting *Temple v. Commonwealth,* 75 Va. 892, 898 (1881)) (emphasis in original). "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. at 486, 71 S.Ct. at 818 (citing *Blau v. United States,* 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950)). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States,* 341 U.S. at 487, 71 S.Ct. at 818.

■ In the matter at hand, the Court need not resort to conjecture to determine how the communication sought from Secord could potentially incriminate him. Not only is there the equivalent of the question, "Do you consent?," there is also the affirmative answer in the form of the 23 lines of the directive. The Committee has candidly stated that it seeks to use the consent directive to obtain Secord's foreign bank records for use in its investigation into his allegedly criminal activities. The Committee can only receive the records it seeks if the content of the compelled "consent" is judged to satisfy foreign bank secrecy law. The links in the chain leading to the potentially incriminating bank records are clear, the first link being the compelled signing of the directive. Also possible, albeit unlikely, is the potentially incriminating use of the consent directive to authenticate the bank records produced in response to it. *See In re: Grand Jury Proceedings (William A. Ranauro),* at 793. The Court would be completely ignoring reality if it were to say that Secord's

signature on the consent directive were not potentially incriminating.

For the foregoing reasons, the Court shall deny the Committee's application as violative of Secord's Fifth Amendment privilege against compelled self-incrimination.

[T]he constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'

*Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1965) (citations omitted).