**UNITED STATES of America, Plaintiff,**

v.

**Frank W. COOK, Defendant.**

**Crim. A. No. CR86–240.**

United States District Court,
N.D. Ohio, E.D.

Sept. 14, 1987.

Christian H. Sticken, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Robert Joe Johnson, Crossett, Ark., for defendant.

MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before this Court is a motion filed by defendant Frank W. Cook for an evidentiary hearing and to designate and suppress certain evidence obtained by the government through the use of waivers and authorizations of disclosure. It is Cook's contention that, because he was compelled by court order, after having refused, to execute such waivers and authorizations, any evidence derived from them was obtained in violation of his fifth amendment privilege against self-incrimination and should therefore be suppressed. The government has filed a motion in opposition to Cook's motion to suppress evidence, and Cook has since filed both a reply brief and a supplemental memorandum in support of his initial motion.

For the reasons set forth below, this Court holds that Cook's fifth amendment

privilege was violated and therefore grants his motion to designate and suppress any evidence the government has derived as a result of such violation.

## I. FACTS

The relevant facts are not in dispute. Defendant Cook, together with Iyler O. Cook and Roy Lee Holland, Jr., were indicted on October 7, 1986 by a federal grand jury that had been, along with the IRS and the FBI, investigating possible criminal violations of federal law. The indictment charged all three defendants with violations of the federal mail fraud statute, 18 U.S.C. §§ 1341–42, and defendant Roy Lee Holland, Jr., with three counts of perjury while testifying before the grand jury.

The grand jury investigation, which began in 1981, focused on an alleged scheme by the named defendants to defraud Automated Building Components, Inc., a Florida corporation that had filed an action (and was later to obtain a judgment) against the American Electric Steel Company, a corporation which, it is alleged, was solely owned by Frank Cook, Iyler Cook, and the Cook family. The scheme allegedly involved the formation by defendants of a corporation in the Cayman Islands for the purpose of making payments to Automated Building Components, and the maintenance by defendants of accounts at certain Cayman banking institutions. As part of its investigation, the grand jury served subpoenas upon two employees of the Cayman International Trust Company. Apparently out of concern that the disclosures they were being asked to make would violate certain laws of the Cayman Islands, and in particular The Confidential Relationships (Preservation) (Amendment) Law of 1979, these employees did not comply with the subpoenas.

While appearing before the grand jury under subpoena in September of 1982, Frank Cook was requested by an Assistant United States Attorney to sign two instruments waiving the protections afforded by these laws and authorizing the disclosure of any records pertaining to bank accounts maintained by him at the Cayman International Trust Company and at Barclays Bank International Limited. On the advice of counsel, Cook refused to execute the waivers. Thereupon, the government sought and obtained from another court in this district an order compelling Cook to execute the waivers.

It is Cook's contention that certain of the documents the government now has in its possession, and that facilitated his indictment, may have been obtained through the use of these waivers, but that the government has so far declined to designate the source of any of its evidence. He moves this Court to order the government to designate all evidence obtained from the Cayman Islands and describe, at an evidentiary hearing, the method by which it was obtained. He also moves the Court to suppress all evidence which was obtained in violation of his privilege against self-incrimination.

## II. FIFTH AMENDMENT ANALYSIS

### A. Discussion of Authority

The fifth amendment to the United States Constitution provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." As interpreted by the Supreme Court, this privilege "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). The operative words here are "compelled," "testimonial," and "incriminating." *See United States v. Authement,* 607 F.2d 1129, 1131 (5th Cir.1978) (enunciating the three-pronged test for communications protectible under the fifth amendment). A disclosure by an accused does not violate the fifth amendment if it is voluntarily given and not compelled, if the evidence divulged is "physical" as opposed to "testimonial," *see Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), or if such evidence lacks the tendency to incriminate, *see Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1950). It is unquestionable that Cook's execution of the

waivers and authorizations was compelled, and it is equally clear that such evidence as has been derived therefrom is potentially incriminating. Therefore, the Court will address in detail only the testimonial character of Cook's act.

Case law concerning the fifth amendment significance of the compelled disclosure of documentary evidence is anything but conclusive. There appears to be a division among the circuits on the issue. The First Circuit has explicitly acknowledged that its holding in *In re Grand Jury Proceedings (Ranauro)*, 814 F.2d 791 (1st Cir. 1987) *(per curiam )* (requiring the target of a grand jury investigation to authorize the release of foreign bank records violated his fifth amendment privilege) is inconsistent with decisions in the fifth and eleventh circuits. *See id.*, at 795–96 *(citing In re United States Grand Jury Proceedings (Cid)*, 767 F.2d 1131 (5th Cir.1985); *United States v. Ghidoni*, 732 F.2d 814 (11th Cir. 1984), *cert. denied*, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 264 (1985)) (finding no fifth amendment protection attached to the compelled consent procedure). While one would have hoped that the Supreme Court pronouncements in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed. 2d 552 (1984), would have anticipated and resolved at least the main area of contention, this has unfortunately not been the case. Recent conflicting opinions attest to the resilience of the controversy. *Compare United States v. Davis*, 767 F.2d 1025 (2d Cir.1985) (finding no fifth amendment violation in the compelled consent procedure) *with Senate Select Committee on Secret Military Assistance to Iran And The Nicaraguan Opposition v. Secord*, 664 F.Supp. 562 (D.D.C.1987) *and United States v. Pedro*, 662 F.Supp. 47 (W.D.Ky. 1987) (holding the compelled consent procedure unconstitutional).

In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the government had sought, in connection with an IRS investigation, to compel the production of certain documents that the taxpayer's accountant had prepared and that were in the possession of the taxpayer's attorney. The court first observed that "the Fifth Amendment would not be violated by the fact that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own testimonial communications." *Id.* at 409, 96 S.Ct. at 1580 *(citing Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)). While the incriminating nature of the documents themselves did not implicate the taxpayer's fifth amendment privilege, however, "[t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers demanded and their possession or control by the taxpayer." *Id.*, 425 U.S. at 410, 96 S.Ct. at 1581. The court explained that, were the taxpayer to comply with the subpoena, he would be "tacitly conced[ing] the existence of the papers demanded and their possession or control by the taxpayer." *Id.* Whether or not the communicative aspects of an act of producing documents are both "testimonial" and "incriminating" was for the Court a difficult question, one whose answer "depend[s] on the facts and circumstances of particular cases or classes thereof." *Id.*

The Court did indicate though, that, however that question may be answered, "[i]t is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment." *Id.* 425 U.S. at 411, 96 S.Ct. at 1581. On the facts before the Court, the government was "in no way relying on the 'truth telling' of the taxpayer," who "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Id.* "The existence and location of the papers," the Court continued, "are a foregone conclusion...." *Id.*

Unfortunately, the Court did not elaborate on its notion of "levels of testimony"

or explain why an "implicit admission" such as is made when documents are produced fails to qualify as protectible testimony. It is curious, also, that the fact that the existence of the papers was a "foregone conclusion" should have been thought to have any bearing on the testimonial character of the taxpayer's communication. As Justice Brennan remarked in his concurrence, "I know of no Fifth Amendment principle which makes the testimonial nature of evidence, and therefore, one's protection against incriminating himself, turn on the strength of the government's case against him." *Id.* at 429–30, 96 S.Ct. at 1589–90 (Brennan, J., concurring).

The Court was presented, in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), with the opportunity to clarify its position. In *Doe,* the owner of certain sole proprietorships sought to quash subpoenas that demanded the production of certain of his business records in connection with a grand jury investigation. After rehearsing its *Fisher* observation that "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect," *Doe,* 465 U.S. at 612, 104 S.Ct. at 1242, the Court explicitly deferred to the district court's factual finding, with which the court of appeals agreed, that in this case "the act of producing the documents would involve testimonial self-incrimination." *Id.* at 613, 104 S.Ct. at 1242. It accordingly held that act to be privileged and incapable of being compelled without a statutory grant of use immunity. *Id.* at 617, 104 S.Ct. at 1244. The Court provided little additional insight into the conditions under which an act of document production is testimonial and therefore susceptible of fifth amendment protection.

Although the Supreme Court has issued no more recent pronouncements on the issues with which this Court is concerned, other, lower court opinions are instructive. The government relies on *United States v. Ghidoni,* 732 F.2d 814 (11th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 264 (1984), a case which, like the present case and unlike *Fisher* and *Doe,* involved a criminal defendant's foreign bank records. Ghidoni was held in contempt after having refused to sign a consent directive that would have enabled the government to obtain the records. In affirming the contempt finding, the court of appeals was impressed by the absence from the consent directive of any language implying that Ghidoni maintained any foreign bank accounts. "Rather, the directive states that *if* the accounts exist, the bank is permitted to disclose records of those accounts to the government." *Id.* at 818 (emphasis in original). Ghidoni would, after signing the directive, still be free to deny the existence or authenticity of the requested records, denials that would ring hollow if, by signing, he were *testifying* that they existed and were authentic. *Id.* At 819.

The Sixth Circuit's decision in *United States v. Schlansky,* 709 F.2d 1079 (1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984), is also profitably considered here. The district court in *Schlansky* had ordered the defendant to comply with an IRS documentary summons. While acknowledging that the act of producing documents may under some circumstances involve a testimonial communication, the court of appeals found no testimonial ingredients in that case and upheld the district court's judgment. Because "[t]here is no serious question as to the existence or location of the documents" and "the summons is quite specific," the court reasoned, "[t]heir production will involve no 'truthtelling' by the taxpayer...." *Id.* at 1083 (*citing Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581). The key question, which on the facts of the case the court answered in the negative, is whether the compelled production involves testimonial communication. The court added:

The answer to this question in turn depends on whether the very act of production supplies a necessary link in the evidentiary chain. Does it confirm that which was previously unknown to the government; e.g., the existence or location of the materials? Does it supply assurance of authenticity not available to

the government from sources other than the persons summonsed?

*Id.* at 1084.

The act of production presumably must supply the "necessary link" not just in the weak sense of making possible the government's acquisition of incriminating materials, but also in the strong sense of furnishing evidence additional to the content of the materials, e.g., evidence of their control by defendant. The *Schlansky* court has apparently also adopted the *Fisher* Court's criterion of protectibility: was the information supplied by the act of production "previously unknown to the government" or was it a "foregone conclusion"? *See Fisher,* 425 U.S. at 412, 96 S.Ct. at 1581–82.

Two unreported decisions provide the most recent judicial treatment of the issue under consideration. In *United States v. Pedro,* 662 F.Supp. 47 (W.D.Ky.1987), the Department of Justice petitioned the court to compel respondent to sign consent directives allowing "any bank or trust company" to furnish the IRS with otherwise unobtainable bank records. The court applied the "previously unknown to the government" test of *Schlansky* and declined to grant the government's petition. Observing that the directive was not limited to named banks and that indeed the government did not know whether respondent maintained *any* foreign bank accounts, the court concluded that the signed consent directive would "supply a necessary link in the evidentiary chain" and hence could not be compelled.

Finally, the District Court for the District of Columbia, in *Senate Select Committee on Secret Military Assistance to Iran And The Nicaraguan Opposition v. Secord,* 664 F.Supp. 562 (D.D.C.1987), considered whether General Secord, in connection with the Senate Select Committee's investigation of the "Iran–Contra affair," could be compelled to execute a directive authorizing any Swiss bank to disclose information regarding Secord's accounts. As against the Committee's contention that the directive was merely "a tool to obtain unprotected bank records," the court pointed out that it is the directive's *content*

(that Secord consents to such disclosure) that the Committee seeks, a content which "is not only testimonial, but ... is also false as far as Secord is concerned." "By signing the directive, Secord would be testifying just as clearly as if he were forced to verbally assert his [consent]." The court has here identified yet another testimonial aspect to the act of signing a consent directive: not only does it concede that the requested records exist and are controlled by the signatory, it effectively asserts that the defendant *consents* to the disclosure of his records, which in the case of "compelled consent" would appear to be false.

### B. The Present Motion

■ The present case is similar to each of the previously discussed cases in many respects, and unlike each in certain other respects. As in several of them, the defendant here has been compelled to sign instruments that authorize foreign banks to release information pertaining to his accounts. The instruments in this case authorize two specifically-named banking institutions in the Cayman Islands to disclose such information, and provide for the waiver by Cook of any protection or privilege afforded by Cayman law. The instruments clearly contemplate that Cook maintains certain accounts with these banks, whether or not it can be said (or could have been said at the time of his signing) that their existence was a "foregone conclusion." That the government at least strongly suspected that Cook controlled such accounts probably means that it did not *rely* on the testimonial aspects or "truth-telling" of Cook's authorizations. This does not imply, however, that the authorizations *had* no testimonial aspects and hence were unprotectible. Whether or not a given communication is testimonial cannot be said to depend on whether anyone relies on its content. (Indeed, its having a "content" is a large part of what is meant by its being "testimonial.") This Court finds itself in agreement with Mr. Justice Brennan, who, in *Fisher,* 425 U.S. at 430, 96 S.Ct. at 1590 (Brennan, J., concurring), indicated that fifth amendment protection is available re-

gardless of what the government may know or not know.

The courts are in a flux when it comes to the question of how to phrase a consent directive to avoid the prohibitions of the fifth amendment. If the documents are requested with specificity, some courts have said that their existence and control by the defendant is a "foregone conclusion" obviating any testimonial communication by him. *See Fisher,* 425 U.S. at 412, 96 S.Ct. at 1581–82. If, as in other cases, the directive is more vaguely worded, and states only that the government may have access to the records *if they exist,* then the defendant is held not to have admitted anything by directing their release. *See Ghidoni,* 732 F.2d at 810. Fifth amendment protection is denied in both instances.

█ This Court finds that any authorization that allows the government to obtain otherwise unobtainable records involves a testimonial communication. It believes, indeed, that a rather strong argument can be made that the testimonial character of a communication varies *directly* with the strength of the government's case. The more specifically the government is able to characterize or identify the records it seeks, the greater the risk that a defendant, in authorizing their release, will be conceding his control over them. Thus where, as here, the waivers and authorizations signed clearly contemplate the existence of specific bank records over which the defendant is suspected to have control, the testimonial aspects of their compelled execution are all the more apparent. Even if, as the government maintains, the authorizations in this case were "broadly worded," they may still be condemned as "fishing expeditions" and so fail to survive fifth amendment scrutiny. *See United States v. Fox,* 721 F.12d 32, 38 (2d Cir.1983).

This Court further finds that, in addition to implicitly admitting the existence of Cayman Island bank accounts and his control over them, Cook has also, by executing the waivers and authorizations, declared that he consented to the release of such records. *See Secord, supra.* Because Cook clearly did not voluntarily consent to their release, but was compelled on pain of contempt to authorize it, Cook was in effect compelled to state that which he knew to be false. This compulsion is made the more repugnant by the presence in the authorizations of statements indicating that Cook's consent was freely and voluntarily given. There is some authority that such a "compelled voluntary consent" procedure may violate due process. *See Ghidoni,* 732 F.2d at 818 n. 7 (*citing United States v. Ward,* No. 81–1–CR–J–B (M.D.Fla. April 6, 1981).

The remaining element of a valid fifth amendment plea—potential for incrimination—requires comparatively little attention. The requirement poses no obstacle to Cook's fifth amendment claim, as on the present facts the Court is not " '*perfectly clear,* from a careful consideration of all the circumstances in the case, ... that [Cook's testimony] *cannot possibly* have [the] tendency' to incriminate." *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1950) (*quoting Temple v. Commonwealth,* 75 Va. 892, 898 (1881)) (emphasis in original). Far from lacking the tendency to incriminate, Cook's compelled waivers and authorizations appear to have been indispensable to the government in securing his indictment.

Having found that such evidence as the government has been able to obtain as a result of the waivers and authorizations signed by Cook was obtained in violation of Cook's privilege against self-incrimination, this Court has no choice but to prohibit the use of such evidence at trial. *See United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) (defendant is entitled "at most" to the suppression of such evidence as has been obtained in violation of his fifth amendment privilege).

### III.  CONCLUSION

The act of executing waivers and authorizations that enable the government to obtain otherwise unobtainable information, which act Frank Cook was compelled by court order to perform, is both testimonial and incriminating. As such it violated Cook's fifth amendment privilege against compelled self-incrimination. It is there-

# 1298

fore ordered that such evidence as appears to have been obtained by the government as a result of such waivers and authorizations, as well as all the "fruits" thereof, be suppressed, and that no further use of such evidence by the government be made, before or during trial. It is further ordered that such evidence be designated as having been obtained from the Cayman banks through the use of Cook's waivers and authorizations. An evidentiary hearing on this matter, at which the government shall be prepared to describe with particularity such evidence and the means by which it was obtained, will be held on Friday, October 2, 1987 at 2:00 p.m.

IT IS SO ORDERED.